761 F.2d 1329
 12 Collier Bankr.Cas.2d 1177, 13 Bankr.Ct.Dec. 352,
Bankr. L. Rep. P 70,575
 In re COMMERCIAL WESTERN FINANCE CORPORATION, a California
Corporation, Debtor.
Bernard J. BRADY and Paul L. Disderdick, Appellants,
v.
Paul B. ANDREW, Trustee, Appellee.
Frank B. AMSBAUGH, et al., Appellants,
v.
Paul B. ANDREW, Appellee.
Bailey TOPLIN, et al., Parties-in-Interest Appellants,
v.
COMMERCIAL WESTERN FINANCE CORP., Debtor-Appellant.
Raymond E. BROOKS, et al., Claimants-Appellants,
v.
Paul B. ANDREW, Trustee-Appellee.
 Nos. 83-1976, 83-1977, 83-2030, 83-2034 and 83-2035.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1985.
Decided May 23, 1985.
 
 Constance B. Harriman, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., Jerome B. Falk, Law Offices of Howard Rice, San Francisco, Cal., for appellants.
 Dennis Montali, Michael H. Salinsky, Kathleen Piraino, Pillsbury, Madison & Sutro, San Francisco, Cal., for appellee.
 On Appeal From the United States District Court For the Northern District of California.
 Before DUNIWAY, PREGERSON, and FERGUSON, Circuit Judges.
 PREGERSON, Circuit Judge.
 
 FACTS
 
 1
 Commercial Western Finance Corporation (CWF) arranged trust deed investments by soliciting money from individuals ("investors") and lending that money to other entities ("borrowers"). In exchange for the funds from CWF, the borrowers gave CWF promissory notes ("borrower notes") secured by deeds of trust on California real estate ("deeds of trust"). In exchange for the funds from the investors, CWF gave the investors its own promissory notes ("CWF notes") secured by partial assignments of the borrower notes and deeds of trust.
 
 
 2
 CWF usually recorded the partial assignments in the county where the property is located. CWF gave the investors copies of the partial assignment deeds of trust, the borrower notes, and borrower deeds of trust, but retained possession of the original borrower notes and deeds of trust.
 
 
 3
 On September 4, 1981, CWF filed a voluntary petition under chapter 11 of the Bankruptcy Code. On November 10, 1981, the bankruptcy court appointed a chapter 11 trustee for the CWF estate. The Trustee filed a chapter 11 plan of reorganization and a disclosure statement[1] on November 19, 1982. The bankruptcy court held a hearing on the disclosure statement on December 13, 1982. The next day, the Trustee filed, and the bankruptcy court approved, an amended plan and disclosure statement.
 
 
 4
 In the disclosure statement, the Trustee challenged the enforceability of CWF's partial assignments of the borrower notes and deeds of trust. He first asserted that the partial assignments were not true assignments, but merely created security interests in the notes and deeds of trust. He then argued that section 544 of the Bankruptcy Code, 11 U.S.C. Sec. 544 (1982), in conjunction with Cal.Com.Code Secs. 9301(1)(b) & 9304(1), entitled him to avoid these security interests.[2]
 
 
 5
 The Trustee contended that the investors never perfected their security interests in the borrower notes and deeds of trust because (1) the borrower notes and deeds of trust are instruments under the California Commercial Code and (2) the investors never obtained possession of these instruments, which is required to perfect the interests under California law. Therefore, the Trustee asserted that, as a judicial lien creditor under section 544, he was entitled to avoid the investors' interest in the borrower notes and deeds of trust.
 
 
 6
 Instead of filing adversary actions against all of the investors to avoid their security interests, the Trustee proposed a compromise as part of the plan: the investors would be paid more than the general unsecured creditors, but would relinquish any claim to the borrower notes, deeds of trust, or the property secured by the deeds of trust.
 
 
 7
 Between December 14, 1982, and January 13, 1983, the investors voted on the plan. Out of approximately 333 investors, 7 filed written objections to the plan, and 84 voted to accept it. On January 17, 1983, the bankruptcy court held a hearing on the Trustee's request for confirmation of the plan. One of the investors, Raymond Brooks, appeared and objected to the Trustee's proposed treatment of his claim under the plan. The court entered Findings of Fact and Conclusions of Law re Confirmation of the Trustee's Amended Chapter 11 Plan, an Order Confirming the Plan, and certified the findings and order for appeal to the district court pursuant to the "Marathon Emergency Rule," General Order 24, section (e)(2)(A)(ii), of the District Court for the Northern District of California.[3]
 
 
 8
 On April 14, 1983, the district court entered its order approving the bankruptcy court's findings of fact and conclusions of law and confirming the plan. On May 16, 1983, four investors filed two notices of appeal pursuant to Fed.R.App.P. 4(a)(1).[4] On May 27, 1983, 89 investors filed a notice of appeal pursuant to Fed.R.App.P. 4(a)(3).[5] On May 31, 1983, 90 investors, including Brooks, filed two more notices of appeal pursuant to Fed.R.App.P. 4(a)(3). The Ninth Circuit Conference Attorney ordered these appeals consolidated on September 7, 1983.
 
 
 9
 The Trustee filed a motion to dismiss the consolidated appeals on September 19, 1983, arguing (1) that none of the investors except Brooks have standing because they did not appear at the confirmation hearing and voice their objections and (2) that Brooks's appeal was untimely. On December 13, 1983, a panel of this court denied the Trustee's motion to dismiss. The investors now ask this panel to address the substantive issues raised in their briefs and the Trustee raises the standing issues again in defense.[6]
 
 ISSUES
 
 10
 I. Whether investors who did not appear and object to the plan at the confirmation hearing have standing to appeal the order confirming the plan.
 
 
 11
 II. Whether Brooks, who did attend the hearing, filed a timely appeal pursuant to Fed.R.App.P. 4(a)(3).
 
 
 12
 III. Whether the Bankruptcy Rules required the Trustee to file individual adversary actions against all of the investors whose security interests he wished to avoid, rather than permitted him to eliminate those interests by a motion to confirm a chapter 11 plan.
 
 
 13
 IV. Whether section 1122 of the Bankruptcy Code required the Trustee to place each investor in a separate class in the plan, rather than permitted him to place all of the investors in one class.
 
 STANDARDS OF REVIEW
 
 14
 I. Standing.
 
 
 15
 Because the bankruptcy court certified its order confirming the plan for appeal to the district court pursuant to General Order 24, the district court did not consider whether the investors had standing to appeal the order. Therefore, we are the first court to consider the standing issue.
 
 
 16
 II. Timeliness.
 
 
 17
 The issue whether Brooks filed a timely appeal pursuant to Fed.R.App.P. 4(a)(3) was not before the district court. We will address this issue concerning our jurisdiction.
 
 
 18
 III. Proper Procedure for Lien Avoidance.
 
 
 19
 The bankruptcy court confirmed the Trustee's proposed plan without addressing the fact that the plan's avoidance of the investor's security interests violated the rules of bankruptcy procedure by circumventing the notice requirements for adversary proceedings. The bankruptcy court simply ruled in the Trustee's favor on the merits, implicitly approving the procedure employed. The district court affirmed.[7]
 
 
 20
 Because we are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision. See, e.g., In re Mellor, 734 F.2d 1396, 1399 (9th Cir.1984); In re Comer, 723 F.2d 737, 739 (9th Cir.1984); In re Bialac, 712 F.2d 426, 429 (9th Cir.1983).[8] We review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. In re American Mariner Industries, Inc., 734 F.2d 426, 429 (9th Cir.1984).
 
 
 21
 Whether the Trustee followed the proper procedures to avoid the investors' security interests involves a question of law that we review de novo. See In re McKay, 732 F.2d 44 (3d Cir.1984) (without discussing the standard of review, the Third Circuit reversed the bankruptcy court's order confirming a chapter 13 plan because the plan violated the rules of bankruptcy procedure).
 
 
 22
 IV. Classification.
 
 
 23
 The bankruptcy court may confirm a plan only if the plan designates classes of claims, 11 U.S.C. Sec. 1123(a)(1), and places only "substantially similar" claims in the same class. 11 U.S.C. Sec. 1122(a). The bankruptcy court made no express finding whether the investors' claims, which the Trustee placed in the same class, were substantially similar. However, the bankruptcy court did find that the plan complied with the applicable provisions of chapter 11, which would include section 1122(a). Because the bankruptcy court's implicit determination that the investors' claims were substantially similar resolves a question of fact, we review it under the clearly erroneous standard. Cf. In re Palisades-On-The-Desplaines, 89 F.2d 214, 217 (7th Cir.1937) (lower court has "broad latitude" in classifying claims under analogous provision of former Bankruptcy Act).
 
 DISCUSSION
 
 24
 I. Whether investors who did not appear and object to the plan at the confirmation hearing have standing to appeal the order confirming the plan.
 
 
 25
 The Bankruptcy Act of 1898 contained an explicit provision, section 39(c), which permitted appeal by any "person aggrieved by an order of a referee." 11 U.S.C. Sec. 67(c) (1976) (repealed 1978). Although the Bankruptcy Code of 1978 contains no parallel provision, we have adopted the "person aggrieved" test as the appropriate standard for determining standing to appeal under the Code. In re Fondiller, 707 F.2d 441, 443 (9th Cir.1983). One question this appeal raises, therefore, is whether the investors' failure to appear at the bankruptcy hearing and object to the proposed order forecloses them from meeting the definition of "persons aggrieved."
 
 
 26
 The Fondiller court defined a "person aggrieved" as one who is "directly and adversely affected pecuniarily by the order of the bankruptcy court." 707 F.2d at 443. We reaffirmed and expanded this definition in In re International Environmental Dynamics, Inc., 718 F.2d 322, 326 (9th Cir.1983), holding that "in a case involving competing claims to a limited fund, a claimant has standing to appeal an order disposing of assets from which the claimant seeks to be paid."
 
 
 27
 Neither the Fondiller nor International Environmental Dynamics decisions mention a requirement of attendance and objection at the bankruptcy court hearing. But, based on a number of older cases, the Trustee argues that attendance and objection are nonetheless prerequisites to being a "person aggrieved."
 
 
 28
 We decided In re Rose, 86 F.2d 69 (9th Cir.1936), before Congress amended the former Bankruptcy Act in 1938 to include section 39(c). Consequently, we applied the normal federal standing rules, rather than the "person aggrieved" test, to determine whether a person appealing a bankruptcy court order had standing. "The rule in federal courts is that a person cannot appeal from an order, decree, or judgment who is not a party or privy to the record." Id. at 71. Finding that the appellant was neither a party nor a privy to a party, we held in Rose that she did not have standing. Id. Although we noted that the statement in appellee's brief that appellant did not appear in the proceeding was uncontroverted, we did not base our decision on that fact.
 
 
 29
 The only other case on this point decided by a court in our circuit is In re Peppers Fruit Co., 24 F.Supp. 119 (S.D.Cal.1938). The district court in Peppers Fruit applied the normal federal "party or privy" test for standing[9] and stated that it "fe[lt] that, in the interest of economy and efficiency of administration of bankrupt estates, reviews from referees' orders, at least those orders which are made after notice, should be limited to applications by parties who have appeared at the hearing before the referee and participated therein." Id. at 121-22.
 
 
 30
 Recognizing the need for economy and efficiency in the bankruptcy system, a leading commentator also supports a requirement of attendance and objection as a limitation on the number of people who have standing to appeal. R. Levin, Bankruptcy Appeals, 58 N.C.L.Rev. 967, 978 (1980). He notes, however, that this requirement should be excused "if the objecting party did not receive proper notice of the proceedings below and of his opportunity to object to the action proposed to be taken. In that case, the requirements of due process outweigh those of judicial efficiency and certainty." Id. at n. 78.
 
 
 31
 Thus, even though we agree that attendance and objection should usually be prerequisites to fulfilling the "person aggrieved" standard,[10] the Trustee's failure to give the investors proper notice that the plan avoided their security interests excuses them from fulfilling these prerequisites in the instant case. The investors appeal because the Trustee sought to avoid their security interests without serving them with the copy of a complaint, the summons, and the notice of trial that the Federal Rules of Bankruptcy Procedure require.[11] To then place on the investors the burden of appearing and objecting to a plan when they were not served with the summons, complaint, and notice of trial would produce an anomalous result, i.e., one that would require them to appear at a hearing without first giving them proper notice of that hearing.
 
 
 32
 The investors plainly meet the Fondiller test for persons aggrieved because they are "directly and adversely affected pecuniarily by the order of the bankruptcy court" confirming the plan. 707 F.2d at 443. The plan eliminated their interests in the borrower notes and deeds of trust and disposed of the assets in the estate from which they seek to be paid. Because their grievance is a lack of proper notice, even though none of the investors except Brooks appeared at the confirmation hearing and objected to the plan, we hold that they have standing to appeal. Cf. Securities and Exchange Commission v. Lincoln Thrift Association, 577 F.2d 600, 603 (9th Cir.1978) (creditors of debtor in receivership had standing to appeal order of U.S. District Court where creditors had notice of hearing before the court, but did not appear).
 
 
 33
 II. Whether Brooks, who did attend the hearing, filed a timely appeal pursuant to Fed.R.App.P. 4(a)(3).
 
 
 34
 Fed.R.App.P. 4(a)(1) states that in civil cases in which appeal is permitted as of right, the notice of appeal must be filed within 30 days after the date of entry of the judgment or order appealed from. Subsection (a)(3) provides that "[i]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed...."
 
 
 35
 The district court entered its order on April 14, 1983. Four investors filed notices of appeal on May 16, 1983, within the 30day period provided in Rule 4(a)(1).[12] Brooks filed his appeal on May 31, 1983, within the 14-day period provided in Rule 4(a)(3).[13]
 
 
 36
 On the premise that the investors who filed notices of appeal within the 30-day period did not have standing, the Trustee reasons that Brooks' appeal is not timely. The Trustee argues that the 14-day extension in Rule 4(a)(3) does not apply when the parties who filed the original notice of appeal did not have standing and that Brooks was required to file his notice of appeal within 30 days of the entry of the district court's order.
 
 
 37
 We need not decide the merits of the Trustee's interpretation of Rule 4(a)(3) to require that the parties filing the original notice of appeal have standing. Because we have held in Part I of this opinion that the investors who filed the original notice of appeal have standing as "persons aggrieved" by the plan's confirmation, Brooks filed a timely notice of appeal even under the Trustee's interpretation.
 
 
 38
 III. Whether the Bankruptcy Rules required the Trustee to file individual adversary actions against all of the investors whose security interests he wished to avoid, rather than permitted him to eliminate those interests by a motion to confirm a chapter 11 plan.
 
 
 39
 Although the Trustee devotes much of his brief to addressing the substantive issue whether appellants' partial assignments are avoidable unperfected security interests under California law, this appeal does not raise that substantive issue. Rather, it raises only a procedural one: whether the Trustee employed the proper procedure to avoid the investors' interests, even assuming that he is entitled to do so. We conclude that by seeking to avoid the investors' interests in a chapter 11 plan, the Trustee failed to follow the procedure Fed.R.Bankr.P. 701 (1973) (superseded in 1983) requires. Because the plan did not comply with the applicable provisions of the Bankruptcy Rules, see Fed.R.Bankr.P. 701-782, we therefore reverse the district court's order confirming the plan.
 
 
 40
 Section 405(d) of the Bankruptcy Reform Act of 1978 is the general statutory provision setting out the procedural rules that control proceedings conducted pursuant to the Bankruptcy Code. The section provides that the "rules prescribed under section 2075 of title 28 of the United States Code and in effect on September 30, 1979, [the Federal Rules of Bankruptcy Procedure] shall apply to cases" under the Code to the extent those rules are "not inconsistent" with the provisions of the Code. Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, Title IV Sec. 405(d), 92 Stat. 2549, 2685 (1978).
 
 
 41
 One of the bankruptcy rules in effect on September 30, 1979, and still in effect when the bankruptcy court confirmed the plan, was Fed.R.Bankr.P. 701.[14] It stated that any proceeding to "determine the validity, priority, or extent of a lien or other interest in property" is subject to the bankruptcy court's adversary proceedings rules, Fed.R.Bankr.P. 701-782. The Trustee's attempt to avoid under section 544 the investors' partial assignments plainly involves a determination of the validity, priority, or extent of the investors' interests in the borrower notes and deeds of trust. Therefore, Rule 701 required the Trustee to initiate adversary proceedings. Indeed, the Advisory Committee Note to new Fed.R.Bankr.P. 7001, essentially equivalent to old Rule 701, explicitly states that the bankruptcy adversary rules "apply directly [to proceedings] brought to avoid transfers by the debtor under Sec. 544...." Fed.R.Bankr.P. 7001 advisory committee note (1983).
 
 
 42
 The bankruptcy adversary proceedings rules basically follow the Federal Rules of Civil Procedure. For example, Fed.R.Bankr.P. 708 states that Fed.R.Civ.P. 8 applies in adversary proceedings, requiring the complaining party (the Trustee in this case) to file a complaint which contains "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for judgment for the relief to which he deems himself entitled." Fed.R.Civ.P. 8(a)(2) & (3). Rule 704 requires the complaining party (the Trustee) to serve the party against whom relief is sought (the investors) with a copy of the complaint, a summons, and a notice of trial. Fed.R.Bankr.P. 704.
 
 
 43
 The trustee's failure to follow the bankruptcy adversary proceedings rules thus deprived the investors of a complaint, summons, and notice of trial. Had the Trustee complied with Rule 704, the investors would have been clearly warned of the serious consequences of the power the Trustee was seeking to exercise under section 544. Although the disclosure statement accompanying the plan set forth the Trustee's substantive arguments supporting his ability to avoid the investors' interests, the statement did not clearly warn the investors that by voting for the plan, they would relinquish whatever security interests the partial assignments created in the borrower notes and deeds of trust.
 
 
 44
 More importantly, in trying to avoid the investors' property interests by the court's approval of the plan, the Trustee sought to place on the investors the burden of challenging the Trustee's ability to avoid their interests by requiring them to object to the plan. Normally, when a creditor files a proof of claim, it becomes prima facie evidence of the claims' validity and amount. Fed.R.Bankr.P. 301. The burden is then on the Trustee to produce evidence and facts to defeat the claim through an adversary proceeding under Rule 701. See 3 Collier on Bankruptcy p 502.01 at 502-17 (15th ed. 1984). The Trustee's attempt to avoid the investors' interests by confirmation of a plan, if successful, would have circumvented the Trustee's duty to prove that he was entitled to such relief.
 
 
 45
 In a similar case, the Third Circuit reversed the bankruptcy court order confirming a chapter 13 plan on the ground that the debtor improperly sought to avoid liens under section 522(f)[15] of the Code as part of the plan, rather than filing adversary actions against the creditors. In re McKay, 732 F.2d 44 (3d Cir.1984). The McKay court held "that where a debtor seeks to avoid a judicial lien pursuant to 11 U.S.C. Sec. 522(f), the adversary proceedings rules adopted by the Bankruptcy Code apply, and that the debtor thus bears the burden of filing a complaint with the bankruptcy court and serving a copy of it on each creditor whose lien the debtor seeks to avoid." Id. at 45.
 
 
 46
 The Trustee tries to distinguish McKay on the grounds that it involved a chapter 13 plan, instead of a chapter 11 plan, and that the debtor was avoiding liens under section 522(f), instead of section 544. Although there are factual differences between McKay and the instant case, the similarities are controlling. Plans under both chapter 13 and chapter 11 involve classification and impairment of claims; the debtor's or trustee's exercise of its powers under both section 522(f) and section 544 involves a determination of the validity, priority, or extent of a lien or other interest in property. The McKay court's review of the applicable Code provisions and bankruptcy rules led it to conclude that "the drafter's intent was to require use of the adversary proceedings rules whenever certain forms of property ... were affected in certain ways (e.g., by avoidance pursuant to section 522(f) )." 732 F.2d at 48.
 
 
 47
 Likewise, our review of the applicable provisions in the instant case leads us to conclude that the rules of bankruptcy procedure required the Trustee to file adversary proceedings against the investors whose partial assignments he sought to avoid pursuant to section 544. If the Trustee wants the benefit of avoiding valid security interests under the strongarm clause of the Bankruptcy Code, he must carry the burden of following the mandated procedures. Although the Code gives him powerful tools to benefit the estate, the accompanying Rules impose certain limitations on the manner in which he can use those tools. If the Trustee wishes to exercise powers under the strongarm clause, the Rules require him to bring separate adversary actions and serve each investor with a copy of a complaint, a summons, and a notice of trial. It is only fair that he respect these limitations.[16]
 
 
 48
 IV. Whether section 1122 of the Bankruptcy Code required the Trustee to place each investor in a separate class in the plan, rather than permitted him to place all of the investors in one class.
 
 
 49
 Section 1129(a) of the Code provides that the bankruptcy court shall confirm a plan only if the plan complies with the applicable provisions of chapter 11. 11 U.S.C. Sec. 1129(a)(1). Two of the applicable provisions are (1) that the plan designate classes of claims, 11 U.S.C. Sec. 1123(a)(1), and (2) that the plan place a claim in a particular class only if the claim is "substantially similar" to the other claims in the class. 11 U.S.C. Sec. 1122(a). The investors argue that their claims are not "substantially similar" and, therefore, that the bankruptcy court should not have confirmed a plan that placed them all in one class.
 
 
 50
 Each of the investors' claims is secured by a different note and deed of trust. Both Collier and case law establish that creditors with claims against different properties generally are entitled to separate classification. 5 Collier on Bankruptcy p 1122.03 at 1122-12 (15th ed. 1984); Mokava Corp. v. Dolan, 147 F.2d 340 (2d Cir.1945); In re Palisades-On-The-Desplaines, 89 F.2d 214 (7th Cir.1937); In re Sullivan, 26 B.R. 677 (Bankr.W.D.N.Y.1982). The only possible exception to this rule is where the different properties are in the same location, purchased at approximately the same time, and thus worth roughly the same amount. See Palisades-On-The-Desplaines, 89 F.2d at 217-18.
 
 
 51
 The Trustee in the instant case has introduced no evidence showing that the properties secured by the borrower deeds of trust are in the same location and were purchased at the same time. Rather, the Trustee argues that the investors' claims are "substantially similar" because all of their security interests are avoidable, leaving them with unsecured, rather than secured claims. This argument puts the cart before the horse. Until the Trustee has filed adversary actions against all of the investors and avoided their liens, their claims are entitled to a presumption of validity under Fed.R.Bankr.P. 301. Because the borrower notes that CWF partially assigned the investors are secured by different pieces of property, the bankruptcy court's implicit finding that the claims were "substantially similar" was clearly erroneous.
 
 
 52
 We therefore reverse the order confirming the plan for improper classification as well as an improper attempt to circumvent the bankruptcy rules of procedure.
 
 
 53
 REVERSED and REMANDED for further proceedings in accordance with this opinion.
 
 
 
 [1]
 Section 1125 of the Bankruptcy Code states that the Trustee may not request creditors to vote on a plan unless he gives the creditors "the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. Sec. 1125(b) (1982). Adequate information "means information of a kind, and in sufficient detail, ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan...." Id. Sec. 1125(a)
 
 
 [2]
 Section 544 of the Bankruptcy Code, commonly referred to as the "strongarm clause," vests the trustee with the rights and powers of a hypothetical creditor who obtained a judicial lien on all of the property in the estate at the date the petition in bankruptcy was filed. 11 U.S.C. Sec. 544(a)(1) (1982). One of these powers is the ability to take priority over or "avoid" security interests that are unperfected under applicable state law, namely, Cal.Com.Code Secs. 9301(1)(b) & 9304(1) in this case. See 4 Collier on Bankruptcy p 544.02 (15th ed. 1984)
 
 
 [3]
 General Order 24 is the name the Northern District of California gives to the Model Rule for the Continued Operation of the Bankruptcy Court System after December 24, 1982, in response to the Supreme Court's decision in Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Section (e)(2)(A)(ii) provides that a District Judge shall review
 an order or final judgment entered under Section (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a District Judge, whether or not the matter was controverted before the bankruptcy judge or any notice of appeal or application for leave to appeal was filed....
 
 
 [4]
 Rule 4(a)(1) provides that
 In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from....
 Fed.R.App.P. 4(a)(1).
 
 
 [5]
 Rule 4(a)(3) provides that
 If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed....
 Fed.R.App.P. 4(a)(3).
 
 
 [6]
 Even though a motions panel previously denied the Trustee's request to dismiss for lack of standing, this panel is not bound by the motions panel's decision and must reconsider the standing issues. United States v. Humphries, 636 F.2d 1172, 1174 n. 2 (9th Cir.1980), cert. denied, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981)
 
 
 [7]
 Under General Order 24, supra note 3, bankruptcy judges could enter final orders and judgments in all matters except "related proceedings." Section (d)(2). "Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court" but "do not include ... proceedings regarding the confirmation of a plan...." Section (d)(3)(A). In related proceedings, the bankruptcy judges were not authorized to enter judgments or dispositive orders, but were required to submit findings, conclusions, and a proposed judgment to the district court. Section (d)(3)(B). After review, the district court would enter what it regarded to be the appropriate judgment or order. Section (e)(2)(B)
 In the instant case, the investors are appealing an order confirming a plan of reorganization. Because proceedings regarding confirmation of a plan are not "related proceedings," the bankruptcy court properly entered a final order and the district court properly acted as an appellate court in reviewing the order.
 
 
 [8]
 In Mellor, Comer, and Bialac, we were reviewing the decision of a Bankruptcy Appellate Panel (BAP)--not a district court--which had reviewed the decision of a bankruptcy court. But after the bankruptcy courts had issued their decisions in these three cases, the Supreme Court invalidated the trial court jurisdiction accorded bankruptcy judges by the Bankruptcy Reform Act of 1978. Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). To prevent undue disruption, the Court held that the Marathon decision would not apply to judgments bankruptcy courts entered before October 4, 1982. Id. at 88, 102 S.Ct. at 2880. The Court later extended this stay to December 24, 1982. 459 U.S. 813, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982)
 In light of Marathon, the Ninth Circuit has held that a BAP may decide only those bankruptcy appeals involving judgments entered before the stay expired on December 24, 1982. In re Burley, 738 F.2d 981, 984 (9th Cir.1984). Judgments and orders entered by bankruptcy judges after that date are not appealable to the BAP. Id.
 Burley 's significance on the standard of review in bankruptcy cases is its effect on prior Ninth Circuit cases, such as Mellor, Comer, and Bialac, which discuss this court's review of BAP decisions. Because the district court replaced the BAP as the intermediate court in this case, see supra note 7, our determinations as to the appropriate standards for reviewing BAP decisions apply when we review the district court's decision in this case as well.
 
 
 [9]
 The district court also decided Peppers Fruit before the Congress amended the Bankruptcy Act in 1938 to include the "person aggrieved" test
 
 
 [10]
 Cf. In re Mifflinburg Body Co., 54 F.Supp. 560, 561 (M.D.Pa.1944) (requirement of attendance and objection prevents "unlimited confusion and even disrespect of the courts and their authority"); In re Record Club of America, Inc., 28 B.R. 996, 998 (D.C.M.D.Pa.1983) (reaffirming the vitality of the requirement of attendance and objection). Contra In re Ernst, Inc., 2 B.R. 757, 761 (D.C.S.D.N.Y.1980) ("The statute creating the right to appeal ... does not require that a creditor appear in the proceeding but only that he be a 'person aggrieved' by the challenged order.")
 
 
 [11]
 See pages 1335-38 infra
 
 
 [12]
 May 14 was a Saturday; therefore, the 30-day period ran until Monday, May 16
 
 
 [13]
 May 30 was a legal holiday; therefore, the 14-day period ran until May 31
 
 
 [14]
 On August 1, 1983, the new bankruptcy rules became effective. New Rule 7001 is essentially equivalent to old Rule 701
 
 
 [15]
 Under section 522(f), the debtor may avoid certain types of liens to the extent that such liens impair an exemption to which the debtor would otherwise be entitled under section 522(b). 11 U.S.C. Sec. 522(f) (1982)
 
 
 [16]
 The Trustee argues that he must be permitted to avoid the investors' security interests in a plan because such a large number of investors are involved (approximately 333) and "[t]he legal issues ... are so complex, and the outcome of litigation ... so expensive, uncertain and time-consuming" that individual adversary actions would deplete the estate and delay the distributions. Yet, he also argues that circumvention of the adversary procedures mandated by the Bankruptcy Rules caused no harm to the investors because he was clearly entitled to avoid their security interests under California law and no individualized factual hearings were necessary
 The Trustee cannot have it both ways. If the claims are so similar that the Trustee can easily prevail on the merits without individualized hearings, then modern rules of joinder would permit him to bring a single adversary action against the investors without substantial expense and delay. If, on the other hand, the legal issues are so complex and the litigation so time-consuming because the court needs to consider the facts surrounding each of the investors' security agreements, then adversary proceedings are particularly appropriate.