**In re McCLAIN AIRLINES, INC., a Delaware corporation, Debtor.**

**Bankruptcy No. B–87–1053–PHX–GBN.**

United States Bankruptcy Court,
D. Arizona.

Nov. 20, 1987.

Leland M. Jones, Fennemore Craig, Phoenix, Ariz., for the Official Unsecured Creditors' Committee.

Bradley J. Stevens, Harrison & Lerch, P.C., Phoenix, Ariz., for debtor.

Richard G. Patrick, Asst. U.S. Atty., Phoenix, Ariz., for Federal Aviation Admin.

Frederick K. Steiner, Snell & Wilmer, Phoenix, Ariz., for American Airlines, Inc.

## OPINION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

### I

McClain Airlines, Inc., a debtor in possession in a voluntary business reorganization under Chapter 11 of the Bankruptcy Reform Act, seeks to assume an alleged executory contract with the Federal Aviation Administration ("FAA"). 11 U.S.C. § 365(a), Rule 6006(a), *F.Bk.R.* Debtor's motion is supported by the official unsecured creditors' committee and opposed by the government. The matter is clearly a core proceeding entitling this Court to enter a final order. 28 U.S.C. § 157(b)(2)(A), (M). The government's initial objections are overruled. The facts necessary for an understanding of this contested matter follow.

### II

On or about March 27, 1986, through a lottery conducted by the FAA, McClain Airlines acquired eight arrival and departure "slots" at O'Hare International Airport. *See* 14 CFR § 93.225 (1987). A slot consists of the right to conduct a takeoff or landing within a certain time period at one of four high traffic density airports: O'Hare, Washington National, La Guardia or Newark. 14 CFR § 93.213(a)(2) (1987); § 93.123(a).

A carrier is ordinarily required to use its slots at least 65% of the time over a two month period. § 93.227(a). Certain exceptions obtain, including a 60 day extension for operators who file bankruptcy petitions. § 93.227(d).

McClain gave the agency notice it would begin utilizing the slots on September 23, 1986. When difficulties in obtaining required operating certificates were experienced, an extension was requested. Finding the carrier was "working diligently for the completion of the certification process and the timely initiation of operations," the agency authorized an extension to October 15, 1986. Letter of FAA Administrator Engen of September 19, 1986. Docket No. 212, at 2–4 and Exhibit A. A second reason asserted for the extension was the agency's own delay in certification processing due to its heavy work load. *Supra*, at 3.

Conditions were attached to the extension, including increased restrictions on the airline's ability to utilize the slots. Although debtor contends such agency action is improper and arbitrary, it attempted to comply given the need to promptly commence operations. Service was initiated from the slots on or about October 20, 1986. Debtor filed bankruptcy February 23, 1987. Contending McClain had failed to meet mandatory usage requirements, the FAA, by letter of May 19, 1987, notified debtor the slots had been recalled.

Slots can be withdrawn "at any time" to fulfill operational needs, such as for international or essential air operations. § 93.223(a). *See also* § 93.219. Additionally, as here, the slots can be recalled for the carrier's failure to use them for the requisite time and intensity. § 93.227(a). Finally, agency regulations provide that slots do not represent a property right. § 93.223(a). Thus, given this provision and the previous administrative action recalling the slots, the government urges there is nothing for debtor to assume.

### III

Section 541(a) of Title 11 mandates that the "estate is comprised of all the following property, wherever located: ... All legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The House and Senate Reports on the Bankruptcy Code indicate the scope of this section is broad and includes all tangible or intangible property and causes in action. *United States v. Whiting Pools*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313 and n. 9, 76 L.Ed.2d 515 (1983); *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir.1984) (all legally recognizable interests become property of the estate, including a contingent interest not subject to possession until some future time). Licenses and permits from governmental agencies are usually found to be estate property. *In re Miller*, 68 B.R. 385, 386–87 (Bankr.W.D.Pa.1986), and cases cited (state liquor license); *In re Beker Industries Corp.*, 57 B.R. 611, 622 (Bankr.S.D.N.Y. 1986) (regional impact order of County Board of Commissioners which permits debtor to transport phosphate); citing *Matter of National Hospital & Institutional Builders*, 658 F.2d 39 (2d Cir.1981), *cert. denied*, 454 U.S. 1149, 102 S.Ct. 1014, 71 L.Ed.2d 303 (1982) (assuming certificate of occupancy issued to nursing home by City Health Department is estate property); *In re Rocky Mountain Trucking Co.*, 47 B.R. 1020, 1021 (D.Colo.1985) (certificate of Public Convenience and Necessity authorizing debtor to provide statewide services as common carrier).

### IV

■ Congress has generally left the determination of property rights in the assets of a debtor's estate to applicable nonbankruptcy law. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *In re Rocky Mountain Trucking Co.*, *supra*, 47 Bankr., at 1021. *See In re Kramer*, 71 B.R. 2, 5 (Bankr.E.D. Pa.1986) (even if a liquor license may not be estate property, the rights with regard to the license under Pennsylvania law are estate property).

The government urges that under applicable federal aviation law, the slots do not constitute estate property, citing, *inter alia*, 49 U.S.C. § 1371(i).

That statute provides: "No certificate shall confer any proprietary, property or exclusive right in the use of any airspace, federal airway, landing area of air-navagation facility."

The statute clearly refers to a certificate of public convenience and necessity traditionally issued by the Civil Aeronautics Board ("CAB"), authorizing a carrier to engage in air transportation. 49 U.S.C. § 1371(a) (1987). Effective January 1, 1986, all functions, powers and duties of the CAB were terminated or transferred by Pub.L. 95–504, § 40(a), Oct. 24, 1978, 92 STAT. 1744. Thus, § 1371(i), which prohibits the defunct CAB from creating property rights in air transportation, has no relevance to whether the Federal Aviation Administration's grant of "slots" constitutes estate property. *Accord Matter of American Central Airlines*, 52 B.R. 567, 570 (Bankr.N.D.Iowa 1985), *contra In re Air Illinois*, 53 B.R. 1, 2 (Bankr.S.D.Ill.1985).

The government cites a line of cases holding that landing slots cannot constitute estate property. *In re Braniff Airways*, 700 F.2d 935 (5th Cir.1983); *In re Air Illinois, supra.* However, it is respectfully suggested the *American Central Airlines* reasoning is more persuasive. As that court noted:

> The Braniff court stated that airport "slots are actually restrictions on the use of property—airplanes; not property in themselves." *In re Braniff Airways*, at 942. The slots do indeed effect a restraint on the use of airplanes, however, possession of an airport slot also entitles the holder to airport access at selected times. Although the FAA may remove a slot at any time, until such action is taken, the holder has a possessory interest in a slot at the given airport. Such a possessory interest must constitute property of the estate. H.Rep. No. 595, 95th Cong., 1st Sess. 367; S.Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS pp. 5868, 6323. The mere fact that an interest exists by the grace of government no longer precludes the interest from being treated as a property right. *Matter of Matto's, Inc.*, 9 B.R. 89, 91 (Bkrtcy.E.D.Mich.1981).

52 B.R., at 570–71.

This approach, allowing heavily regulated property rights to pass into the estate as property, but subject to existing restrictions, has been endorsed by a noted commentator:

> This is an attribute, for example, of FAA landing rights. In *In re Braniff,* 700 F.2d 935 (5th Cir.1983), the Fifth Circuit appropriately held that they could not be sold by an airline in bankruptcy to another airline. It, however, incorrectly concluded that FAA landing rights were not "property." Id., at 942. They were, but they were restricted in value by applicable nonbankruptcy rules.

Thomas H. Jackson, The Logic and Limits of Bankruptcy Law 97–98, at n. 22 (1986).

In fact, the *Braniff* court seemingly adopted this reading as an alternative holding in connection with debtor's attempts to sell its slots under § 363B:

> Moreover, even if we were to assume that the slots give rise to some limited proprietary interest as to confer jurisdiction over them on the Bankruptcy Court, the most substantial and persuasive line of authority establishes that any transfer of a state or federal regulatory license or certificate is subject to the continuing jurisdiction and approval of the applicable agency.
>
> . . . .
>
> ... At most, a determination that the slots were "property" might allow the debtor to transfer them to another carrier for purposes of the bankruptcy laws, but approval of that transfer under the Federal Aviation Act would rest solely with the FAA.

700 F.2d, at 942 (citations and footnote omitted). *See also In re Air Illinois, supra,* 53 B.R. at 2–3.

The government also urges no property right exists as the agency itself prohibited such a legal result by express regulation. *See* § 93.223(a), *supra:* "Slots do not represent a property right but represent an operating privilege subject to absolute FAA control."

Assuming *arguendo* the agency's rule-making powers to regulate air commerce include the right to conclusively determine a slot cannot constitute a property right as a matter of law, it is doubtful a slot is

"subject to absolute FAA control." In point of fact, circuit court judicial review of FAA final orders is expressly authorized. *Air California v. United States Department of Transportation*, 654 F.2d 616, 619–22 (9th Cir.1981) (letter from FAA chief counsel did not constitute final agency action); *Nevada Airlines v. Bond*, 622 F.2d 1017, 1019–20 (9th Cir.1980) (FAA administrator's emergency revocation of an airline's operating certificate is subject to judicial review as final agency action, although administrative remedies were not exhausted); 49 U.S.C. § 1486(a) (1987 supp.). Accordingly, although great deference and discretion is given to the agency's decisions, *Eastern Air Lines v. FAA*, 772 F.2d 1508, 1511 (11th Cir.1985), *Nevada Airlines, supra,* 622 F.2d, at 1020–21; § 1486(e), its decisions, like those of most public bodies are hardly "absolute."

Moreover, the continuing vitality of the abolition of "property rights" in slots by § 93.223(a) should be considered in light of current administrative developments. Recently, the United States Department of Transportation adopted new guidelines granting carriers great flexibility in subsequent purchase or sales of slots:

> The Department has decided to adopt the "buy/sell" proposal to permit maximum reliance on market forces to determine slot distribution following the initial allocation of slots. The Department believes that the rule minimizes the need for government intervention in the continuing allocation and distribution of slots.... Finally, the Department believes that a market in slots will permit long-range stability in carrier planning and marketing that would not be available if slots were periodically allocated using another mechanism such as lotteries or auctions.

High Density Traffic Airports; Slot Allocation and Transfer Methods; Final Rule, 50 Fed.Reg. 52,180, at 52,184 (1985) (to be codified at 14 CFR parts 11 and 93).

Accordingly, effective April 1, 1986, slots may be bought, sold or leased for any consideration in any time period or traded in any combination for slots at the same or another high density airport. 14 CFR § 93.221(a) (1987).

Purchase or sale can be done by "any person" and "any air carrier or commuter" may use the slots. § 93.221(c). Agency oversight appears to consist essentially of receiving written requests for confirmation of the transfer, § 93.221(a)(1); keeping a record of the transfer, § 93.221(b) and issuing a written confirmation. § 93.221(a)(4).

The *Braniff* court did not have the opportunity to review this 1986 rule change in its 1983 decision.

Enactment of rules to "minimize government intervention" and provide "maximum reliance on market forces to determine slot distribution" in § 93.221(a) is difficult to reconcile with the agency's claim in § 93.223(a) that such free market items do not constitute property rights.

### V

 Finally, the government suggests that any rights debtor held in these slots were terminated for nonuse by agency action. This may well be true. Bankruptcy is basically a procedural forum designed to provide a collective proceeding for the sorting out of nonbankruptcy entitlements. *In re Worcester*, 811 F.2d 1224, 1228 (9th Cir. 1987). Ordinarily, a debtor acquires no additional rights by virtue of its filing over that provided by applicable nonbankruptcy law. Accordingly, if the government has properly and permanently withdrawn the slots under appropriate federal administrative law, then debtor and the estate have lost them. Here, however, the carrier contends slot withdrawal was improper and unlawful. If it has a right under federal law to contest and set aside the withdrawal, such right survives in bankruptcy and is property of the estate under § 541(a)(1). *In re Worcester, supra,* 811 F.2d, at 1228 (a right under California law to set aside a foreclosure sale, after deeds have been recorded and property sold to a third party is property of the bankruptcy estate).

 This estate right can only be asserted in the forums established and through the manner prescribed for review of FAA

decisions. The forum is clearly not this Court. 49 U.S.C. § 1486(a); *In re Air Illinois, supra,* 53 B.R., at 2–3.

## VI

█ The government also questions the procedural posture of the debtor's request to "assume" the slots under 11 U.S.C. § 365. The nature of the slot operation and allocation process may well indicate a request for approval to use or sell the slots would be more appropriate. 11 U.S.C. § 363(b)(1). These procedural matters are academic if debtor does not prevail in its argument that it continues to possess rights in the slots. Absent that, there is nothing to assume under § 365(a) or to use under § 363(b)(1). Accordingly, the substantive issue of continued rights in the slots should first be resolved.

█ The government also complains the § 541 estate property issue should have been resolved through debtor's filing of an adversary complaint and summons rather than through motion practice as a contested matter. *Cf.* Rules 7001, 9014, *F.Bk.R.* It is true failure to proceed by complaint when one is required is reversible error. *In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1336–38 (9th Cir. 1985). However, the government's argument ignores the posture of this case. Debtor instituted the contested matter by filing a motion seeking authorization to assume an alleged contract with the FAA for the slots. Whether the appropriate procedure was to invoke § 365 or § 363, debtor is instructed to proceed by motion practice rather than a complaint. Rules 6004(a), 6006(a), 9014, *F.Bk.R.* The government raised, *inter alia,* a defense that the slots did not constitute estate property under 11 U.S.C. § 541(a)(1). I am cited to no authority mandating that a defense involving § 541 issues requires an opponent to file an adversary complaint.

█ The position that property does or does not constitute estate property arises in a wide variety of contested matters, including a defense to a charge of violation of the automatic stay under § 362(h), an objection to sale of estate property under § 363(b)(1) or an objection to requested compensation for preserving estate assets. 11 U.S.C. § 503(b)(1)(A). Nothing in the Code implicates an automatic complaint filing requirement merely because such defense is raised. Such procedure would unduly restrict the intent of the Federal Bankruptcy Rules that ordinarily the summary procedure of a motion is to be utilized unless one of the specific types of litigation listed in Rule 7001 has been instituted. Reflecting the summary nature of much bankruptcy litigation, no response is required to a motion unless ordered; the Court is granted discretion to mandate application of additional adversary rules, including use of a complaint, if the contested matter becomes unwieldy. Rule 9014, *F.Bk.R.* This is not such a case. Here, the dispute was handled entirely by briefing with no demand for an evidentiary hearing. Accordingly, no necessity for the more formal procedure of a complaint is indicated.

## VII

█ Ordinarily, a debtor's rights are not substantively increased as against other parties merely because a bankruptcy petition was filed. That principle obtains here. Unless a court of appropriate jurisdiction concludes the slot termination was improper, the slots cannot be used. However, until that resolution occurs or, alternatively, the stay is lifted to allow agency termination, debtor's claimed rights constitute estate property. *In re Computer Communications,* 824 F.2d 725, 728–31, CCH BLD ¶ 71,933, at 91,733–35 (9th Cir.1987) (even prior to assumption, executory contracts become estate property notwithstanding claims they have terminated under non-bankruptcy law). Accordingly, the government's objections are overruled without prejudice to further proceedings in a body of appropriate jurisdiction to conclusively establish debtor's slot rights.