**In re Robin Ann SMITH, Debtor.**

**Robin Ann SMITH, Plaintiff,**

v.

**NEW YORK STATE HIGHER EDU-
CATION SERVICES
CORPORATION, Defendant.**

Bankruptcy No. 83–01317.
Adv. No. 87–0013.

United States Bankruptcy Court,
N.D. New York.

March 21, 1988.

---

H. Paul Doucette, Jr., Syracuse, N.Y.,
for debtor.

Frederick J. Schreyer, Atty., Office of
Counsel, NYSHESC, Albany, N.Y.

MEMORANDUM–DECISION, FINDINGS
OF FACT, CONCLUSIONS OF LAW
AND ORDER

STEPHEN D. GERLING, Bankruptcy
Judge.

This cause comes before the Court on the
motion of the New York State Higher Edu-
cation Services Corporation ("NYSHESC"),
the defendant in the adversary proceeding
commenced by Robin Ann Smith ("Debtor")
pursuant to § 523(a)(8)(B) of the Bankrupt-
cy Code, 11 U.S.C.A. §§ 101–1330 (West
1979 & Supp.1987) ("Code"). NYSHESC
seeks to dismiss that part of Debtor's com-
plaint which claims that her student debt,
the subject of said adversary proceeding,
was already discharged in her original
bankruptcy case, entitling her to the return
of her federal tax refund which had been
applied to her NYSHESC account as part
of a federal government tax refund inter-
cept program. A hearing was conducted in
Syracuse, New York on November 24,
1987.[1]

JURISDICTIONAL STATEMENT

The Court has jurisdiction of this core
proceeding by virtue of 28 U.S.C.A.
§§ 1334(b) and 157(a) and (b)(1) and (b)(2)(I)
(West Supp.1987). The following is gov-
erned by Rules 9014 and 7052 of the Feder-
al Rules of Bankruptcy Procedure ("Fed.R.
Bankr.P.").

FACTS

The facts are not in dispute. Sometime
in 1981 the Debtor obtained a $2,500.00
education loan guaranteed by NYSHESC,
which became due on August 1, 1982.
NYSHESC purchased the loan as a default
on June 16, 1983 for $2,682.95, the principal
and interest due on that date.

The Debtor filed a voluntary petition in
Chapter 7 December 30, 1983. Shortly
thereafter, her attorney at the time corre-
sponded with NYSHESC about the student
loan and submitted two affidavits, sworn to
by the Debtor on December 28, 1983, set-

---

1. NYSHESC had also sought to compel the
Debtor to fully answer its interrogatories but
withdrew this request at the hearing after repre-
senting to the Court Debtor's compliance there-
with.

ting forth her circumstances of undue hardship. Based on these affidavits, Debtor's former attorney requested NYSHESC to consent to the dischargeability of the student loan. In a letter allegedly dated January 17, 1984, NYSHESC refused and stated that it could not voluntarily agree to the dischargeability of the loan and could only respect a Court decision. At some point therein, the Debtor apparently filed her affidavits with the Court. She received her discharge April 18, 1984.

Sometime toward the end of April 1986, the Debtor received a notice from the Internal Revenue Service, dated April 21, 1986, informing her that her entire 1985 federal tax refund of $1,133.46 was being applied to partially satisfy her past due obligation with NYSHESC. On March 2, 1987, the Debtor commenced the underlying adversary proceeding specifically seeking a determination that her debt to NYSHESC was discharged, or alternatively, dischargeable, in her 1983 bankruptcy case, that said debt was now forever discharged and that NYSHESC be ordered to release her 1985 federal tax return which it was holding in trust. NYSHESC filed the instant motion October 19, 1987.

## ARGUMENTS

At the hearing, counsel for NYSHESC argued that the self-executing language of Code § 523(a)(8) and its predecessor statute 20 U.S.C. § 1087–3 make a student loan nondischargeable unless the court rules or the parties agree to the contrary. NYSHESC maintained that since no final judgment had been rendered, the debt had not been discharged. The Debtor's former attorney's offer, NYSHESC further stated, did not rise to the kind of proceeding mandated to invoke a judicial determination of dischargeability of this student debt.

Debtor responded that the law at the time she filed her petition in December 1983 provided that the loan was nondischargeable unless it fell within the five-year or undue hardship exceptions. She contended that Code § 523(a)(8)(B) neither proscribes nor prescribes any particular method which a debtor must use to demonstrate undue hardship. Furthermore, she stated that the bankruptcy rules permit, but do not require that an adversary proceeding be brought to determine the dischargeability of a debt. Even if they did, however, the Debtor asserted that when she provided the affidavit of undue hardship to the State, she then shifted the burden of going forward on the adversary proceeding to the State.

Debtor also averred that equity is on her side, since it should not be incumbent on a debtor under those circumstances to commence an adversary proceeding from the standpoint of the costs of litigation and filing bankruptcy. At that point, the State should have commenced the adversary proceeding and not having done so they were now barred to contend that they should have the opportunity to commence or defend such a proceeding.

The Debtor also contends that the State did not offer any evidence to rebut her affidavit of undue hardship, and was put on notice of her position so that she had every reason to believe that the debt was dischargeable. She stated that her position was bolstered by the State taking no action on collecting the debt until seizing her income tax return two years after her discharge.

In response to the Court's questioning, counsel for the Debtor admitted that he could find no law to specifically support his positions with regard to an adversary proceeding as not being the only avenue to determine the dischargeability of a debt or the shifting of the burden of going forward by the affidavits.

NYSHESC responded by pointing to Code § 523(c) which, in providing that certain debts, not including student loans, are dischargeable unless the creditor files an adversary proceeding, creates a negative inference that the creditor is under no obligation to commence such a proceeding under Code § 523(a)(8). It also stated that the notice in the form of the affidavit was not sufficient to shift the burden because a determination of unusual hardship turns on both objective and subjective factors such as the Court observing the Debtor's de-

meanor at trial and making estimates about her future.

After a colloquy with the Court, the Debtor postured that, as with any other listed debt in a bankruptcy petition, the creditor here had the opportunity to object. Having done nothing after being put on notice by her coming forward with the affidavits, NYSHESC was now estopped from claiming dischargeability. The State replied that everyone is presumed to know the law and the Debtor should have acted more diligently to protect her own rights. The Debtor ended her argument by stating the question as whether or not an adversary proceeding is required in the first instance to determine undue hardship.

The Debtor also disclosed at the hearing that she had filed an answer to NYSHESC's motion, but neither the Court nor NYSHESC had received those papers as of the hearing. To date, there is no such answer in the record.

### ISSUE

Whether the filing with the Court of an affidavit by a debtor, setting forth what she believed to be circumstances of unusual hardship, discharges her student loan under the exception referred to in Code § 523(a)(8)(B) when the creditor did not file an objection to the affidavit upon receiving it or consent to the dischargeability of the debt, and neither party commenced an adversary proceeding to determine the student loan's dischargeability?

### DISCUSSION AND CONCLUSIONS OF LAW

Pursuant to 28 U.S.C.A. § 2075 (West 1979 & Supp.1987) and upon review by the Congress, the United States Supreme Court, in an Order dated April 25, 1983, promulgated the Federal Rules of Bankruptcy Procedure to govern the practice and procedure in cases under Title 11, as recommended by the Judicial Conference of the United States. These rules took effect on August 1, 1983 and became applicable to all bankruptcy proceedings then pending, unless the Court determined them to be infeasible or to work injustice, in which case the former procedures applied.

The statute provides that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." Legislative history explains that under the Code almost all procedural matters are now left to the Federal Rules of Bankruptcy Procedure, a departure from prior practice under the Bankruptcy Act of 1898 (repealed by the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549) where the rules superseded conflicting statutory provisions. *See* S.REP. NO. 989, 95th Cong., 2d Sess. 158, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5944 ("Senate Report") ("To the extent that a rule is inconsistent, the statute will govern"); H.R. REP. No. 595, 95th Cong., 1st Sess. 449, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5963, 6405 ("House Report") (same).

Therefore, unless a procedural rule is inconsistent with 28 U.S.C. § 2075, and then the Code controls, a bankruptcy court is bound to follow without exception the Bankruptcy Rules. *See United New Mexico Bank v. Wilferth (In re Wilferth),* 57 B.R. 693, 694 (Bankr.D.N.M.1986). *See e.g. In re Searles,* 70 B.R. 266, 271 (D.R.I.1987) (Code § 350(b) overrides Fed.R.Bankr.P. 5010 in allowing bankruptcy court to reopen case sua sponte); *In re Roberts,* 68 B.R. 1004, 1006 (Bankr.E.D.Mich.1987) (to extent Fed.R.Bankr.P. 4001(b) conflicts with Code § 362(e), the latter prevails). *See also In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1336–1338 (9th Cir.1985) ("Although the Code gives him [trustee] powerful tools to benefit the estate, the accompanying Rules impose certain limitations on the manner in which he can use those tools."). One court has found it to be reversible error in failing to proceed by the required complaint. *See In re McLain Airlines, Inc.,* 80 B.R. 175, 180 (Bankr.D.Ariz.1987) (citing to *In re Commercial Western Finance Corp., supra* ). Moreover, "a party challenging a bankruptcy rule has a 'heavy burden' of showing that the rule deals with a matter of substance rather than procedure." *Jones v.*

*Hill (In re Hill)*, 811 F.2d 484, 487 (9th Cir.1987) (citations omitted).

The 1983 Advisory Committee Note to Fed.R.Bankr.P. 9014—"Contested Matters" —explains that any actual dispute in a bankruptcy case is either litigated as a contested matter or an adversary proceeding. Fed.R.Bankr.P. 7001 provides that "[a]n adversary proceeding is governed by the rules of this Part VII." It then lists ten categories, of which the sixth is "to determine the dischargeability of a debt". The Court notes that while the operative verb in Fed.R.Bankr.P. 9014 is "shall" no such language exists in Fed.R.Bankr.P. 7001. Additionally, the 1983 Advisory Committee Note to Fed.R.Bankr.P. 7001 observes that "[t]he rules in Part VII are based on the premise that to the extent possible practice before the bankruptcy courts and the district courts should be the same so that these rules either incorporate or are adaptations of most of the Federal Rules of Civil Procedure." Fed.R.Bankr.P. 9014 instructs that the Part VII rules may also be applied to a contested matter.[2]

A maxim of statutory construction is that a court must look not merely to a particular clause in which general words are used but must also consider the whole statute and the objects and policy of the law's enactment. *See Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974). It is well established that bankruptcy laws strive to distribute assets to creditors in a fair and equitable manner while providing the debtor with a fresh start. *Id.* at 646, 94 S.Ct. at 2434 (citations omitted); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citation omitted). Exceptions to discharge under Code § 523 are to be narrowly construed in the debtor's favor to further this policy. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Arnold*, 33 B.R. 765, 767 (Bankr.E.D.N.Y.1983). However, the dischargeability exceptions in Code 523(a) demonstrate Congress' decision to allow certain competing public interests to override bankruptcy's "fresh start" purpose. *See Forsdick v. Turgeon*, 812 F.2d 801, 802 (2d Cir.1987).

With this in mind, the Court notes that the legislative history surrounding Code § 523 explicitly refers to the bankruptcy rules to specify "who may request determinations of dischargeability ... and when such a request may be made." Senate Report, supra, at 77, U.S.CODE at 5863; House Report, supra, at 363, U.S.CODE at 6319. Presumably, the reference implicitly included "how" such determinations of dischargeability were to be made since procedure is "machinery as distinguished from its product." BLACK'S LAW DICTIONARY 1083 (5th ed. 1979). Fed.R.Bankr.P. 7001(6) is supplemented by Fed.R.Bankr.P. 2002(f)(6) and 4007.

In its research, the Court found only one reported decision involving the dischargeability of a student debt that did not involve an adversary proceeding commenced by the creditor or the debtor. *See In re Wilson*, 76 B.R. 19 (Bankr.D.R.I.1987). Two respected commentators also support the view that determinations of dischargeability be brought in adversary proceedings. *See 9 L. King, COLLIER ON BANKRUPTCY ¶ 7001.09 at 7001–21 (15th ed. 1987); B. Weintraub & A. Resnick, Bankruptcy Law Manual ¶ 3.10 at 3–58 (rev. ed. 1986).* In addition, while the legislative history surrounding the enactment of Code § 523(a)(8) is replete with conflict, the Senate report indicates that "[t]his provision was intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan." Senate Report, *supra*, at 79, U.S.CODE at 5865. *See also United States v. Bradburn*, 75 B.R. 108 (S.D.Ind.1987) (construing 20 U.S.C.A. 1087–3, Code § 523(a)(8)'s predecessor, which was in effect at the time debtor filed her petition in November 1977, to be

---

**2.** The Court notes that this includes Fed.R. Bankr.P. 9011—"Signing and Verification of Papers"—which provides, inter alia, that "[i]f a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required."

**396**

self-executing and finding student debt not discharged).

The Court cannot ignore the established practice, supported by the aforementioned body of law, of commencing an adversary proceeding to determine the dischargeability of a debt, including student debt. The Bankruptcy Rules became effective on August 1, 1983 and so were applicable to the Debtor when she filed her Chapter 7 on December 30, 1983. Pursuant to Fed.R. Bankr.P. 4007(b), a nondischargeability complaint with respect to her student debt could have been filed at any time, by either the debtor or NYSHESC. The rule further provided that her case could be reopened for the purposes of filing such a complaint and the additional filing fee would be waived.

Thus, the Court finds the Debtor's claims that NYSHESC is now estopped from objecting to the dischargeability of the student loan because of its prior conduct with respect to the affidavit totally without merit. While the Court, under its equitable powers, might have come to a different result concerning this actual dispute had the Debtor made a motion and triggered an evidentiary hearing instead of merely filing a set of self-serving affidavits, that scenario presents a different case from the one at bar. Hence, the Debtor's novel argument with respect to the shifting of the burden of proof is unavailing and she failed to meet her heavy burden in challenging the Bankruptcy Rules.

Accordingly, based on the foregoing, NYSHESC's motion to dismiss that part of the Debtor's complaint claiming that her student debt was previously discharged in her bankruptcy case is granted. This issue is now ripe for trial, for which the Clerk will set a date, conditioned, of course, on the disposition of any other pending motions.

It is so ordered.