**In the Matter of Paul R. COMPTON and Hannelore S.A. Compton d/b/a Compton Real Estate, Inc., d/b/a Era Realty, etc., Debtors.**

**Alfonso SANCHEZ RAMOS and Guadalupe Saldivar De Sanchez, Appellants,**

v.

**Paul R. COMPTON, and Hannelore S.A. Compton, etc., Appellees.**

**No. 89–1696**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1990.

KING, Circuit Judge:

Plaintiff-appellants, Alfonso Sanchez Ramos and Guadalupe Saldivar De Sanchez (Creditors), filed a complaint to determine the dischargeability of a debt against defendant-appellees, Paul R. and Hannelore S.A. Compton (Debtors). The Debtors moved for the dismissal of such complaint on the grounds that it was not timely filed under the governing bankruptcy code provisions. The bankruptcy court held, and the district court affirmed, that the complaint had to be dismissed as "untimely filed under the mandatory time frame imposed by [Bankruptcy] Rule 4007(c)." The Creditors appeal to this court.

## I. FACTS AND PROCEDURAL BACKGROUND

Creditors approached Debtors in the course of the Debtors' activities as real estate agents and were shown, and ultimately made several payments toward, a condominium in El Paso, Texas.

On May 20, 1985, Debtors filed a bankruptcy petition under Chapter 7. The Debtors' schedules included the following listing:

Mr. and Mrs. Sanchez

c/o Victor Falvey

1155 Westmoreland Street

Suite 208A

El Paso, Texas

The Clerk's office relied on this listing and sent notice of the section 341(a) creditors' meeting. 11 U.S.C. § 341(a). Such notice included a statement that the 60 day period in which to file a complaint against dischargeability would expire on August 25, 1985. The notice was mailed June 3, 1985, but never received by the Creditors because Victor Falvey (Falvey) had no relationship with the Creditors.[1]

According to the bankruptcy court's find-

Albert Armendariz, Sr., El Paso, Tex., for appellants.

Nelson Smith, El Paso, Tex., for appellees.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

1. Although the genesis of the Debtors' association of Falvey, an attorney, with the Creditors is unclear, the record contains two pertinent affidavits. First, the record contains the affidavit of debtor Paul Compton in which he claims that he recollected that Falvey represented the Creditors in the real estate transaction at issue in this case. The record also contains an affidavit by Falvey; he states that he received the bankruptcy court's notice, but that he "never represented a Mr. and Mrs. Sanchez in any proceedings[,]" did not know for whose benefit the notice was intended and, therefore, had "disposed of the

ings and statement of facts,[2] however, on May 23, 1985, Debtors' attorney, Donald S. Leslie (Leslie), contacted H. Tati Santiesteban (Santiesteban), then Creditors' attorney in relation to the real estate transaction at issue, by letter and informed Santiesteban that the Debtors had filed for bankruptcy and "advised Santiesteban to resolve the matters involving the real estate condominium transaction that is the subject matter of Creditors' complaint, through the Bankruptcy Court, and provided Debtors' bankruptcy case number."[3] Correspondence on this matter continued between Leslie and Santiesteban and on July 10, 1985, Leslie sent Santiesteban a letter stating that arrangements to clear title on the condominium the Creditors were in the process of purchasing would have to be made through the bankruptcy trustee. Leslie's letter also provided contact information for the bankruptcy trustee.

On August 2, 1985, Leslie wrote Albert Armendariz, Sr. (Armendariz), the Creditors' new lawyer, and informed him of the correspondence he had had with Santiesteban.[4] Leslie also enclosed a copy of a letter that he had sent Santiesteban regarding the situation. Armendariz responded with a letter to Leslie on August 21, 1985 in which he requested further information about the reports filed with the bankruptcy court about the Creditors' interest in the condominium.

On September 5, 1985, ten days following the August 26, 1985 deadline, Armendariz—acting on behalf of the Creditors—filed a "Complaint Against Dischargeability" under Bankruptcy Code sections 523(a)(2) and (4). 11 U.S.C. §§ 523(a)(2) and (4). The complaint was based on the Debtors' alleged conversion of funds of the Creditors held by the Debtors. Debtors responded by filing a motion to dismiss on September 13, 1985. The Debtors based their motion on the expiration of the time set for filing such complaints. An extension for filing was neither requested nor granted under Bankruptcy Rule 4007 prior to the running of the limitations period. Creditors opposed this motion and claimed that the complaint was filed ten days late because the Creditors had never received notice of the proceedings of deadlines from the bankruptcy court. They also pointed out that the Debtors' schedules failed to contain their complete names or address in Mexico. They alleged that their claim was not listed and, therefore, not dischargeable. Alternatively, the bankruptcy court noted that the Creditors contended that their claim was "exempt[ed] from discharge because the alleged conversion by the Debtors of the funds held in escrow does not constitute a debt contemplated by section 341(a)."

The motion to dismiss was heard by the bankruptcy court on January 13, 1986. The bankruptcy court, in an opinion rendered March 25, 1986, found that Creditors' claim was not exempted from discharge and that Santiesteban was made aware of the Debtors' bankruptcy by Leslie in a letter prior even to the mailing of the notice by the clerk. Though Creditors never received official notice of the bankruptcy from the bankruptcy court, based on the actual knowledge of Creditors' counsel—in adequate time for the filing of a response or a motion to extend the deadline—the bankruptcy court found the Creditors precluded from filing their complaint late.

The Creditors appealed and the district court—after stating that the sole issue appropriately before it was "whether the Creditors' late filing of a Complaint against dischargeability of a debt should have been considered on the merits by the Bankrupt-

---

papers as material not related to any matter over which [he] had any interest in."

**2.** We note that prior to the bankruptcy court's ruling on the Debtors' motion to dismiss, the parties stipulated that the ruling could be made based on the briefs, a series of letters between Creditors' attorneys and debtors' counsel, and the affidavits of Falvey and debtor-Paul Compton.

**3.** From the record and the Debtors' brief it appears that the letter referred to here was actually signed by Larry A. Baskin, an attorney in the same firm as Leslie.

**4.** From the record before us, it is unclear exactly when or why the Creditors changed attorneys.

cy Court"—affirmed the judgment of the bankruptcy court.[5]

## II. STANDARD OF REVIEW

In accordance with the scheme of 28 U.S.C. § 158(a), the Creditors' appealed initially to the district court. However, at this point, we review the bankruptcy court's findings in the same manner as we would in an appeal coming initially from the district court. *In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1333 (9th Cir.1985) ("Because we are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision."). Hence, we adhere to the rule that findings of fact will not be set aside unless clearly erroneous. *In re Texas Research, Inc.*, 862 F.2d 1161, 1163 (5th Cir.1989). Legal issues, on the other hand, we decide de novo. *Id.*

As we are requested to review only issues of law in the case at hand, we engage in an independent review.

## III. DISCUSSION

On appeal, Debtors ask us to consider the following two issues:

1. Whether the 60 day filing deadline for filing a complaint to dispute the discharge of a debt under Bankruptcy Rule 4007(c) "unlawfully enlarges, abridges or modifies a substantive right in violation of 28 U.S.C. § U.S.C. 2075."

2. Whether "[a] creditor's actual knowledge of Bankruptcy proceedings, without receiving formal notice of specific filing deadlines from the debtor excuses the untimely filing of a complaint objecting to the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2) and (4)."

As the Debtors failed to raise the first of these issues below, we are constrained from considering it at this stage. Although the second issue was not raised in the same form as it is presented to us, we note that both the district court and the bankruptcy court addressed the issue of notice in their orders and conclude that the issue was raised in a manner sufficient to require us to consider it.

The Creditors ask us to find actual notice, without formal notice of filing deadlines, of a bankruptcy proceeding insufficient to bar the late filing of a complaint against dischargeability in cases arising under 11 U.S.C. §§ 523(a)(2) and (4).[6] We

5. In its factual background section, the district court summarized the Creditors arguments as follows:

> Creditors argue that Debtors are not entitled to benefit from a dismissal of Creditors' Complaint because Debtors allegedly acted with intent to commit fiduciary fraud pursuant to 11 U.S.C. § 727(a)(4)(A) [footnote omitted]. Creditors argued in their Complaint Against Dischargeability: (1) that Debtors materially misrepresented the schedules of assets and liabilities filed in Bankruptcy; (2) could not be holding property for the benefit of creditors because Debtors executed a covenant not to sell which vitiated their authority to sell the property; (3) did not communicate the existence of this covenant to Creditors; (4) encumbered the property, thereby constituting an interest therein; and made false oaths to the Bankruptcy Court at the meeting of Creditors with respect to these issues.... Creditors further argue that such fraud affects adequate notice of relief.

6. Sections 523(a)(2) and (4) provide as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (B) use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive; or
>
> (C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an

decline this invitation in relation to the case at hand.

As noted above, Debtors listed a Mr. and Mrs. Sanchez on their schedules. However, the notice sent did not reach the Creditors because the Debtors listed an incorrect address. The "deficient" listing left the Creditors in the same position as unscheduled creditors. "It is well settled that if a debtor lists incorrectly the name or address of a creditor in the required schedules, so as to cause the creditor not to receive notice, that creditor's debt has not been 'duly scheduled' … and if the creditor has no actual knowledge of the bankruptcy proceeding, the creditor's debt is not dischargeable." *In re Adams*, 734 F.2d 1094, 1098 (5th Cir.1984).

■ The fact that a debt is improperly scheduled does not necessarily create a right to file a complaint against discharge late. As *Adams, supra,* implies, where a creditor has actual knowledge of the proceedings, the debt may still be dischargeable. *See also In re Frankina*, 29 B.R. 983, 985 (Bankr.E.D.Mich.1983) ("The [Plaintiffs'] contention that the mere failure of the debtor to list their proper address in the schedules gives them the right to file a late complaint is without merit."). Section 523(a)(3)(B) of the Bankruptcy Code codifies this result in relation to unscheduled debts of the type described in sections 523(a)(2) and (4) as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.)

. . . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed in time to permit—

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case in time for such timely filing and request*[.]

11 U.S.C. § 523(a)(3)(B) (emphasis added).[7] *See also In re Alton*, 837 F.2d 457, 460 (11th Cir.1988) (per curiam) ("The statutory language [of section 523(a)(3)(B)] clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates.").

■ Precedent in case law also upholds a finding that notice of bankruptcy proceedings received in time to act prior to the filing deadlines, without formal notice of filing deadlines, constitutes sufficient notice—even in cases alleging fraud. Although there is a dearth of case law directly on this point in the Fifth Circuit, at least one case, *Neeley v. Murchison*, is apposite. 815 F.2d 345 (5th Cir.1987). In *Neeley*, Neeley, who had obtained a judgment based on findings of fraud against a debtor who later went into Chapter 11 bankruptcy, failed to file an objection to the dischargeability of his claim within the appropriate limitation period. *Id.* While Neeley re-

11 U.S.C. §§ 523(a)(2) and (4).

7. We note that section 523(a)(3) has been found only to apply where the debtors are individual debtors and not corporate debtors:

Section 523(a)(3) places a burden of inquiry upon a creditor only when the debtor is an "individual debtor." A corporate debtor is not an individual debtor for the purposes of Section 523.

*In re Spring Valley Farms, Inc.,* 863 F.2d 832, 834 (11th Cir.1989). Because the case at hand involves individual debtors, rather than a corporate debtor, we need not address the result that would obtain in the case of a corporate debtor.

ceived notice of the bankruptcy proceedings against the debtor from the bankruptcy clerk and was represented at the creditors' meeting, he was not informed that a dischargeability deadline had been set [8] and he filed his objection to dischargeability 10 days post the time limitation set by Bankruptcy Rule 4007(c).[9] *Id.* at 346.

■ Still, "[b]ecause the creditor had notice of the bankruptcy proceedings and more than ample opportunity to file his complaint in time," the panel in *Neeley* affirmed the dismissal of Neeley's complaint on the grounds that it was "time-barred." *Id.* at 345. In so holding, the *Neeley* court stated:

[Section] 523(c) of the Code, which Rule 4007 is designed to implement, places a heavy burden on the creditor to protect his rights: a debt of the type presented here is automatically discharged unless the creditor requests a determination of dischargeability. The one narrow exception to this rule incorporates a duty-to-inquire approach to notice issues. Under § 523(a)(3)(B), a debt is not automatically discharged if the debtor fails to schedule the creditor *and* the creditor had no notice or *actual knowledge* of the case in time to file a claim and a request for determination of dischargeability. Thus, in cases such as this one, it would be inconsistent with the scheme of § 523 to require technical compliance with the notice provision of Rule 4007: this would place the creditor who has written notice of the bankruptcy (albeit deficient notice under the Rule) in a

better position than the unlisted creditor whose debt is discharged under § 523(c) if he merely learns of the bankruptcy proceedings in time to protect his rights. *Neeley v. Murchison*, 815 F.2d at 347. Although the Creditors in the instant case were not properly scheduled and, therefore, are not in precisely the same position as those in *Neeley*, they are in a similar position in that they possessed notice of the bankruptcy proceedings at a date early enough for them to act upon their knowledge. Thus, we believe that in the case at hand the bankruptcy court and the district court correctly dismissed the Creditors' complaint.

Cases outside of the Fifth Circuit also support our conclusion. For example, in *In re Price*, a closely analogous case recently decided by the Ninth Circuit, an unscheduled creditor in the process of suing a debtor, in part for fraud, whose attorney received notice that the debtor had filed for Chapter 7 bankruptcy approximately two months before the running of filing deadlines, was denied permission to file a late complaint contesting the dischargeability of the relevant debt. 871 F.2d 97, 97–98 (9th Cir.1989). The *Price* court found that where the attorney representing the creditors in the state court in connection with the same claim that the creditors belatedly sought to have declared nondischargeable "was given actual notice of the bankruptcy proceedings in time to file a complaint, or at least to file a timely motion for an extension of time[,]" "notice to counsel constituted notice to the [creditor]." *Id.* at 99. Thus, the court concluded that although

---

**8.** In fact, when Neeley's attorneys contacted employees of the clerk's office to ask about the dischargeability date, they were told that none had been set. *Neeley v. Murchison*, 815 F.2d 345, 346 (5th Cir.1987).

**9.** Rule 4007(c) states:

A complaint to determine the dischargeability of any debt pursuant to 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002 [directing clerk to give notice by mail]. On motion of any party in interest, after hearing on notice, the court may for

cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.
Bankruptcy Rule 4007(c).
Section 523(c) provides:
Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.
11 U.S.C. § 523(c).

the creditor had not received information about filing dates, "[t]he fact that [the debtor] failed to list [the creditor] as a creditor did not relieve [the creditor] of his obligation to take timely action to protect his claim." *Id.* *See also In re Alton*, 837 F.2d at 459 (In denying an unlisted creditor with actual knowledge of bankruptcy proceedings an extension to file an objection to discharge of debt allegedly arising from fraud, court held: "Despite the misleading actions, inadvertent or intentional, of debtor Alton, the time specifications set out in the Bankruptcy Code are sufficiently clear to have placed an obligation on creditor Byrd to follow the case and to take the timely action necessary to pursue his claim.").[10]

Based on the foregoing, we are convinced that the bankruptcy court and the district court acted appropriately in dismissing the Creditors' complaint on the basis of untimeliness.[11] Moreover, contrary to the Creditors' arguments, we believe that a discharge in the instant case is not contrary to public policy or Congressional intent. "Section 523(a)(3)(B) specifically provides that when a debtor fails to list those debts incurred fraudulently or incurred because of malicious injury to another or lists them too late to allow a creditor to file a proof of claim and a

**10.** Numerous bankruptcy court opinions contain similar conclusions. *See, e.g., In re Sam*, 94 B.R. 893, 894 (Bankr.W.D.La.1988) (where a creditor had actual notice of bankruptcy proceedings—but who was not scheduled initially and claimed not to have received an amended schedule—the bankruptcy court held that "[w]hile the argument of Plaintiff's counsel that he was inexperienced in bankruptcy had strong facial appeal, the Court after serious consideration believes that an alarm should have gone off once he learned that the Defendant was in bankruptcy, and that he had adequate time to learn the bar date for filing a complaint and to take appropriate action to protect a very substantial claim for damages."); *In re Young*, 33 B.R. 533, 534 (Bankr.N.D.Ohio 1983) ("[A] creditor, who has actual knowledge of his debtor's bankruptcy proceeding and has had sufficient time within which to file a proof of claim and complaint for a determination of dischargeability, has the obligation to protect his claim by filing the required papers. If he fails to act[,] the debt he is owed will be discharged, even though he had not received formal notice and was not scheduled."); *In re Rider*, 89 B.R. 137, 140 (Bankr.D. Colo.1988) ("This Court is persuaded that pursuant to Section 523(a)(3)(B), [Plaintiff], although neither listed nor scheduled, had sufficient notice and knowledge of the case in time to timely file a proof of claim and request a determination of dischargeability such that he is, now, barred from filing a request for a determination of dischargeability.").

**11.** We note that a substantially different result has been reached in the Tenth Circuit in relation to creditors' allegations of inadequate notice where no formal notice was received in relation to Chapter 11 (as distinguished from Chapter 7) bankruptcy proceedings. For example, in *Reliable Electric Co., Inc. v. Olson Construction Co.*, the Tenth Circuit, on the basis of due process, affirmed the district court's order, affirming the judgment of the bankruptcy court in which that court found that the unsecured claim of an unscheduled creditor with actual, general knowledge of the debtor's Chapter 11 proceeding—but no formal notice—was not subject to the debtor's plan of reorganization or discharged because notice was not adequate. 726 F.2d 620 (10th Cir.1984). The *Reliable* court stated:

As specifically applied to bankruptcy proceedings, the [Supreme] Court has held that a creditor, who has general knowledge of a debtor's reorganization proceeding, has no duty to inquire about further court action. The creditor has a 'right to assume' that he will receive all of the notices required by statute before his claim is forever barred.

*Id.* at 622 (quoting *New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953)); *see also In re Herd*, 840 F.2d 757, 759 (10th Cir.1988) ("Even if a creditor is aware of bankruptcy proceedings, there must be reasonable notice before a claim will be barred for untimeliness."). The Tenth Circuit, however, appears to make a distinction between Chapter 11 and Chapter 7 proceedings. *See In re Green*, 876 F.2d 854, 857 (10th Cir.1989) (dismissal for untimeliness of a complaint against dischargeability upheld where an unlisted creditor in a Chapter 7 proceeding had actual notice of the bar date in advance of the filing deadline and "[b]ecause of the basic difference in the notice provisions of the relative [sic] statutes, the rule that governs notice and dischargeability in Chapter 11 does not apply in Chapter 7."); *cf. In re Spring Valley Farms, Inc.*, 863 F.2d at 835 (in context of Chapter 11 proceedings, after court determined that section 523 did not apply because case involved corporate debtor, court held that "11 U.S.C.A. § 1141 does not discharge the debt of a creditor who was known to an individual corporate debtor and failed to receive notice under Bankruptcy Rule 2002(a)(8), even if the creditor had actual knowledge of the general existence of the bankruptcy proceedings." (footnote omitted)).

dischargeability complaint in timely manner, then those debts will be discharged 'unless such creditor had notice or actual knowledge *of the case* in time for such timely filing and request' (emphasis added)." *In re Alton,* 837 F.2d at 460 (quoting 11 U.S.C. 523(a)(3)(B)) (footnote omitted). As the provision stands, it protects creditors against whom fraud has been perpetrated and who lack awareness of bankruptcy proceedings. However, it explicitly places a burden on creditors with knowledge of bankruptcy proceedings to act to protect their rights. As the Eleventh Circuit sums up the policy considerations:

> This [11 U.S.C. 523(a)(3)(B) ] furthers the bankruptcy policy of affording a 'fresh start' to the debtor by preventing a creditor, who knew of a proceeding but did not receive formal notification, from standing back, allowing the bankruptcy action to proceed without adjudication of his claim, and then asserting that the debt owed him is undischargeable.

*Id.; see also In re Sam,* 94 B.R. 893, 898 (Bankr.W.D.La.1988) ("Responsibility to inquire into the deadline for filing a complaint is not so burdensome as to outweigh the 'fresh start' policy and the need for expeditious judicial administration of bankruptcy cases."). Given the circumstances of the case *sub judice,* we see no reason to deviate from this well established policy.

### IV.

For all of the above reasons, we AFFIRM the district court's judgment, affirming the bankruptcy court's judgment.

AFFIRMED.