In re NASSON COLLEGE, Debtor.

NASSON COLLEGE, Plaintiff,

v.

NEW ENGLAND ASSOCIATION OF SCHOOLS AND COLLEGES, INC., Defendant.

Bankruptcy No. 282–00416.
Adv. No. 87–2006.

United States Bankruptcy Court, D. Maine.

Jan. 5, 1988.

Gregory Tselikis, John Paterson, Bernstein, Shur, Sawyer and Nelson, Portland, Me., for plaintiff.

Robert Lizza, Sherburne, Powers & Needham, Boston, Mass., Kathleen Barry, Atty., Drummond Woodsum, Portland, Me., Courts Oulahan, Washington, D.C., David Fischer, Wildman, Harrold, Allen, Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

FREDERICK A. JOHNSON, Chief Judge.

Nasson College, the Plaintiff, is a reorganized Chapter 11 debtor operating as a post-secondary educational institution in Springvale, Maine. The Defendant, the New England Association of Schools and Colleges, Inc. (NEASC), is a voluntary, self-governing organization whose members are accredited institutions. Among its functions NEASC undertakes to evaluate schools and colleges for accreditation. The Council on Postsecondary Accreditation (COPA) appeared as *amicus curiae*, filed a brief and argued orally.

During the administration of the Chapter 11 case and before confirmation, NEASC terminated the accreditation of Nasson.[1] Nasson now complains, in Count I of its complaint, that termination of accreditation was a violation of the automatic stay of Section 362(a)(3) of the Bankruptcy Code, because it was "an act to obtain possession of property of the estate or ... to exercise control over property of the estate." Nasson also alleges that NEASC's refusal to reinstate Nasson's accreditation is in violation of a specific order of this court.

In Count II of its complaint Nasson asserts that NEASC is a governmental unit, and that it terminated Nasson's accreditation solely because Nasson filed for relief under Chapter 11. Nasson argues that NEASC's actions are discriminatory and proscribed by Section 525(a) of the Code.

Nasson seeks a "permanent mandatory injunction" ordering the NEASC to restore accreditation to Nasson as it existed on the date of filing for Chapter 11 relief. It also seeks a ruling that the NEASC is in contempt of the automatic stay and an order of this court, and, therefore, is subject to sanctions, including damages and costs.

Both parties have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. The court has reviewed the affidavits and exhibits submitted by the parties, parts of the voluminous records on file in the case and carefully considered the arguments of counsel. As a result, the court concludes that NEASC is entitled to summary judgment.

## FACTS

The material facts are not in dispute. Nasson College was incorporated by a Private and Special Act of the Maine Legisla-

---

1. Nasson's Board of Trustees acceded to the termination of accreditation. The court was unaware of the termination until this adversary proceeding was filed.

ture in 1909 [2] and has operated as a private, four year, liberal arts college. It became a member of NEASC in 1960 and was accredited at the time it filed its Chapter 11 petition.

Faced with declining enrollment and increasing costs, Nasson filed for relief under Chapter 11 of the Bankruptcy Code on November 4, 1982. Nasson continued to offer educational programs and activities through the second semester of the 1982–1983 school year.

By letter of November 22, 1982, NEASC, by its Commission on Institution of Higher Education (Commission), informed the school that the Commission was concerned about the fiscal stability of the school and requested (or ordered) that "Nasson College, show cause in writing by January 21, 1983,[3] why the commission should not recommend termination of its accreditation." The letter stated that the Commission did not want "to prejudge the situation at Nasson College," but that they were concerned.

Nothing further occurred regarding accreditation until the Board of Trustees of the college, at a meeting held on April 25, 1983 voted:

That Nasson College, as of May 1, 1983 shall cease operations ... (recognizing that, as a practical matter, the college must now cease its educational programs if the college is to retain any possibility of carrying out an educational program in the future)....

During the April 25, 1983 meeting the President of Nasson, Dr. Schick, talked by phone with an official of NEASC.

On the same date, April 25, 1983, the Commission met and voted to recommend to the Executive Committee "that the accreditation status of Nasson College as an educational institution be terminated effective May 2, 1983." Certain conditions were provided for the protection of students nearing graduation. The school was notified of the Commission's action by letter dated April 27, 1983. The letter stated that

the reason for the Commission's action was that:

the trustees of Nasson College have voted to cease instructional programs and other institutional operations effective after commencement exercises to be held on May 1, 1983. Because only institutions offering instruction may be accredited, membership status will cease effective with the conclusion of educational activities.

The Commission's letter explained that Nasson had a right to appeal and contained a copy of NEASC's appeal policy and procedures.

On May 10, 1983, the Executive Committee of NEASC voted:

that the accreditation of Nasson College be terminated effective May 2, 1983, with the stipulation that accreditation will be maintained for degree-granting purposes for those students enrolled at Nasson in the Spring of 1983 with thirty-six (36) hours or less remaining to earn their Nasson degree.

At a meeting of Nasson's Board of Trustees held on May 25, 1983, the Trustees, in effect, agreed with NEASC's decision. No appeal from the decision was taken by Nasson, nor was the termination of accreditation brought to the court's attention by Nasson or by the Creditors' Committee, which, at the time, was very zealous in protecting the estate's property.

Although educational activities ceased at the end of the 1982–1983 school year, the Board of Trustees continued to meet and the office of the Registrar remained open on an "as needed" basis to handle students' transcripts and other business. One Dean, one principal business officer and three other members of the school's staff remained on the payroll.

On September 18, 1984, the Creditors' Committee of Nasson, which had been very active throughout, filed a "liquidation plan" for Nasson College. The plan was finally confirmed by this court on November 9, 1984, and by the District Court on November 16, 1984. The plan was mod-

---

2. Some file documents use the date of 1912.

3. Later extended by NEASC to February 1, 1983.

ified by an order of this court dated November 21, 1984. That modification was to provide for the reorganization or "reconstitution" of Nasson as a college by use of a "reduced core" campus.

On December 10, 1984, an agreement between the Creditors' Committee, Nasson and Edward P. Mattar, of Worcester, Massachusetts, was executed. Mr. Mattar is experienced in the educational field, having operated a very successful college in Massachusetts for many years. The agreement provided for the retention by the reorganized Nasson of several buildings and other essential assets.

The agreement was conditioned upon Mattar's receipt from the State of Maine, or the appropriate agency thereof, written assurances that Nasson's charter and degree granting authority remain in full force and effect, or a final order of the Bankruptcy Court containing findings that such charter and degree granting authority have not been revoked, and that Nasson's Board of Trustees remained duly constituted.

On February 12, 1985, a hearing was conducted, after notice, on the joint motion of the Creditors' Committee and Edward P. Mattar, III "Regarding Consummation of Second Amended Plan of Reorganization." As a result of that hearing an order was prepared for the Court's approval and signature. The order was signed by this court on March 8, 1985, and docketed the same day.[4] The order, as pertinent here, contained the following language:

> 5. That the Debtor has maintained continuous operations since the petition date, and the Debtor may continue all operations as a college with full degree-granting authority, powers, licenses, privileges, and *accreditations* in and to the same extent as it enjoyed as of the date of the petition, November 4, 1982. (emphasis added).

As previously noted in footnote 1, *supra,* the court was unaware of the termination of Nasson's accreditation by NEASC as of May 1, 1983. Further, not being an academician, the court was not fully cognizant of the significance of accreditation. The court has reviewed the tape recording of the hearing of February 12, 1985, which resulted in the Order of March 8, 1985, and not once during that hearing was accreditation mentioned. The minutes of the meetings of the Board of Trustees of the College, which were admitted as an exhibit for the purpose of reestablishing continuity of the Board, did, of course, contain discussions of the school's loss of accreditation. It was not necessary for the court to study these minutes until this proceeding was underway. As a consequence, at the time of the March 8, 1985 Order the court was unaware of the school's accreditation problem.

In September of 1985, the reorganized Nasson College resumed educational programs and activities. Its new officers and trustees immediately attempted to resolve the question of the college's accreditation with NEASC. NEASC has insisted that Nasson's accreditation was terminated in 1983, and that it must now apply for accreditation *de novo* and submit to the accreditation process. This adversary proceeding, commenced by Nasson, resulted.

## PROPERTY OF THE ESTATE

Count I of Nasson's Complaint presents the issue of whether "accreditation" is property of the estate. Nasson asserts that it clearly is, and that NEASC violated the automatic stay of Section 362(a) by terminating Nasson's accreditation. It argues that the termination constituted an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

This issue is one of first impression. No reported decision has been cited by the parties in support of their position and the court has found none.

Section 541 of the Code deals with property of the estate. It provides:

> (a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

---

**4.** A similar order was signed by the District Court on March 18, 1985.

(1) [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.

.     .     .     .     .

(c)(1) [A]n interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

The legislative history of Section 541 informs us:

The bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests, such as interests in real or personal property, tangible and intangible property, choses in action, causes of action, rights such as copyrights, trademarks, patents, and processes, contingent interests and future interests, whether or not transferable by the debtor. (citations omitted).

H.R.Rep. No. 595, 95th Cong., 1st Sess., at 175 et seq. (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6136.

Congress intended a broad range of property to be included in the estate. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). There are, however, outer boundaries of the bankruptcy estate. The Supreme Court in *Whiting Pools,* did not decide what, or where, those outer boundaries are. *Id.* at 205, n. 10, 103 S.Ct. at 2314, n. 10.

■ Certainly, in determining what is property of the estate, a determination must first be made as to what is property. Is accreditation, a status, property of the estate? The court concludes that it is not.

Some guidance is offered by the Accreditation Handbook published by the Commission on Institution of Higher Education.

The Commission is responsible for formulating and maintaining standards of accreditation for institutions such as Nasson. "Accreditation is a status granted to an educational institution or a program that has been found to meet or exceed stated criteria of educational quality." Handbook at 1.

This status, although it has value to the institution, is in essence, held in the nature of a trust for the Commission and the public, and assures the educational community, the public, and interested agencies that the institution has clearly defined objectives which meet criteria published by the Commission. The status is not permanent. The institution must continuously comply with the requirements for accreditation. Failure to comply would jeopardize the integrity of the accreditation process and tend to mislead prospective students and others who rely upon accreditation in making important decisions.

Accreditation may not be bought, sold, pledged, or exchanged; it may not be liquidated by a trustee in bankruptcy, or distributed to creditors. Accreditation will not be found on a balance sheet or scheduled as an asset on the debtor's bankruptcy schedules. Although it may enhance the value of goodwill it is not goodwill. An institution may have control of its activities and property which affect accreditation; but, it has no control over its status as an accredited institution. In seeking and accepting accreditation and membership in NEASC it placed control of its status in the association. This lack of control and lack of other attributes of property leads the court to conclude that accreditation is not property, and, therefore, is not property of the estate within the meaning and intent of Section 541 of the Bankruptcy Code.

**RETROACTIVE RELIEF FROM STAY**

■ Nasson would enjoy little comfort under the facts of this proceeding even if the court could find that accreditation is property of the estate and that NEASC's termination was a violation of the Section 362(a)(3) stay. This proceeding is an example of the "limited" circumstances in which

retroactive relief from the automatic stay should be granted. *See In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir. 1984).

The automatic stay is an important and fundamental part of bankruptcy law designed to protect both debtors and creditors and cannot be waived by the debtor. *Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206 (2d Cir.1986). Actions taken in violation of the stay are generally void. Nevertheless, equitable considerations apply in the exercise of bankruptcy jurisdiction. *In re Smith Corset Shops, Inc.,* 696 F.2d 971, 976 (1st Cir.1982).

In this proceeding NEASC acted in good faith and with the utmost fairness and compassion. The court is convinced that neither NEASC nor the Board of Trustees of the school realized that a question would, or could, arise regarding a violation of the automatic stay. Further, had NEASC sought relief from the stay during the Spring of 1983, the court would have been required to grant the relief for cause under Section 362(d)(1). Nasson, effective May 1, 1983, had ceased its educational programs. Such programs are essential for accreditation.

> Whatever may be the proper scope of judicial monitoring of associations like AICS [Association of Independent Colleges and Schools], it does not include de novo review of their evaluative decisions.

*Marlboro Corp. v. Ass'n. of Independent Colleges and Schools, Inc.,* 556 F.2d 78, 80, n. 2 (1st Cir.1977).

### THE COURT ORDER

Nasson claims that in refusing to reinstate its accreditation NEASC is in violation of this court's order of March 8, 1985. We will not spend much time on this issue. The order of March 8, 1985, as it purports to continue Nasson's accreditation, was based upon a lack of information and should not have been entered. As previously stated, the court was not informed that Nasson's accreditation had been terminated in May of 1983. The court will entertain a motion, under Rule 60(b) Fed.R.Civ.

Proc. to amend that order to eliminate the word "accreditation."

### THE SECTION 525 ISSUE

■ The final issue raised by this proceeding is whether NEASC is a "governmental unit" within the intent of Section 525 of the Code, and if so, whether NEASC's termination of accreditation was based solely on Nasson's filing its Chapter 11 petition. The court finds that NEASC is not a "governmental unit" and further, that termination of accreditation was not based solely upon Nasson's filing for protection under Chapter 11.

Nasson argues that funding of quality education is an important objective of the United States Government and NEASC is instrumental in providing quality education by performing its accreditation function. Thus, Nasson asserts, NEASC performs a governmental function and is, therefore, an instrumentality of the Government. Nasson relies on *Marjorie Webster Jr. College v. Middle States Association of Colleges and Secondary Schools,* 302 F.Supp. 459 (D.D.C.1969), *rev'd on other grounds,* 432 F.2d 650 (D.C.Cir.), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). The District Court in that case noted that the Association acts in a quasi-governmental capacity because its accreditation role is necessary for the distribution of federal funds. 302 F.Supp. at 470.

Several recent decisions stand in the way of Nasson's successful reliance on *Marjorie Webster.* In a fact situation very similar to the case at bar, the Eighth Circuit in *Medical Institute of Minnesota v. National Association of Trade and Technical Schools* held that the Association's decision to deny reaccreditation to the Medical Institute is not attributable to the federal government. 817 F.2d 1310, 1313 (8th Cir. 1987). The Medical Institute argued, as Nasson does here, that its students are entitled to federal financial assistance only if the school remains accredited. Since the Department of Education (DOE) has recognized the Association, the DOE has delegated to the Association the decision whether Medical Institute's students are

eligible for federal funds. The Eighth Circuit rejected this argument because it is the DOE, not the association, who is responsible for the loss of financial aid to students. *Id.* (*citing Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)). *See also Transport Careers, Inc. v. National Home Study Council,* 646 F.Supp. 1474 (N.D.Ind.1986); *In re Barbee,* 14 B.R. 733, 736 n. 4 (Bankr.E.D.Va.1981) (The court rejected the debtor's argument that a Bank is a 'governmental' unit or 'quasi-governmental' unit due to the extensive Federal and State regulation of the banking industry); *In re Revere Copper and Brass, Inc.,* 32 B.R. 725, 727 (S.D.N.Y.1983) (" 'Governmental unit' in the bankruptcy code refers exclusively to actual governmental groups and not to organizations acting in a governmental capacity.")

Nasson's accreditation by NEASC is only one of several requirements for the distribution of federal funds. *See Generally* 34 C.F.R. § 668 et. seq. (1986). The Federal Government is not involved in the accreditation process. One of the distinctive features of American Education is that the development and maintenance of educational standards are the responsibilities of non-governmental, voluntary accrediting associations.

The court agrees with the cases cited, that NEASC is not a governmental unit within the meaning and intent of the Code.

Further, it is clear from the exhibits in this proceeding that Nasson's accreditation was terminated because it ceased to offer educational programs after May 1, 1983, a necessary requirement of accreditation, and not solely because of its filing of its Chapter 11 petition. *See In re Marlboro,* 556 F.2d at 78.

An appropriate order will be entered.