In re DRAUGHON TRAINING INSTITUTE, INC., Debtor.

Bankruptcy No. 89BK–13095–S11.

United States Bankruptcy Court, W.D. Louisiana, Shreveport Division.

April 10, 1990.

Curtis R. Shelton, Cook, Yancey, King & Galloway, Shreveport, La., for plaintiff.

Molly D. Shannon, Asst. Atty. Gen., Austin, Tex., for Tex. Educ. Ass'n.

## MEMORANDUM RULING

STEPHEN V. CALLAWAY, Chief Judge.

Draughon Training Institute, Inc., debtor-in-possession (hereinafter referred to as "Draughon"), has filed this Rule to Show Cause seeking to have this Court declare that the actions of the defendant, Texas Education Association (hereinafter referred to as "TEA"), in denying the Certificate of Approval of Draughon to be null and void as in violation of the automatic stay, seeking an injunction ordering TEA to lift its denial and reinstate Draughon's Certificate of Approval, and to otherwise enjoin TEA from restraining Draughon's ability and/or authority to continue to accept and enroll students during the pendency of this bankruptcy proceeding, and further seeking actual and punitive damages and attorney's fees.

The pertinent facts are as follows. On November 6, 1989, TEA sent Draughon a Notice of Intent to Deny Certificate of Approval. On December 7, 1989, Draughon filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On December 13, 1989, TEA sent Draughon its Notice of Denial of Certificate of Approval. On December 28, 1989, Draughon notified TEA of its bankruptcy filing and of its intent to appeal the denial of its Certificate of Approval.

As set forth in its letter to Draughon dated September 13, 1989, TEA denied Draughon's Certificate of Approval for two reasons. First, Draughon failed to provide evidence that it maintained a policy to ensure consummation of the refunds of the unused portion of tuition, fees, and other charges within thirty (30) days after termination as required under Section 32.39 of the Texas Education Code. TEA also notified Draughon that, pursuant to Section 32.39(e) of the Texas Education Code, interest would be assessed at the rate of 20.50% on all unverified refunds which became overdue on or after September 1, 1989. Second, TEA stated that it was denying Draughon's Certificate of Approval because Draughon failed to satisfy the re-

quirements of financial soundness pursuant to Section 32.33(i) of the Texas Education Code. TEA also notified Draughon that its authority to enroll new students was suspended as of the date of receipt of the notice of Denial of Certificate.

Draughon claims that TEA's conduct violates Section 525 and Section 362(a)(1), (3) and (6) of the Bankruptcy Code, and entitles Draughon to injunctive relief, actual and punitive damages, and attorney's fees.

## SECTION 525

■ Section 525(a) provides that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against" a debtor solely because the debtor "[1] is or has been a debtor under this title ... [2] has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or [3] has not paid a debt that is dischargeable in the case under this title ..."

Draughon argues that TEA denied its Certificate of Approval solely because of Draughon's insolvency and failure to pay arguably dischargeable debts, that is, the refunds to the students. However, it is apparent from TEA's Notice of Denial letter that its denial of Draughon's Certificate, while based in part on Draughon's insolvency and failure to pay dischargeable debts, was based on additional conduct as well, namely, Draughon's failure to maintain a policy to ensure compliance with the statute regulating refund of unused fees. Section 32.39(b)(7) of the Texas Education Code requires proprietary schools to maintain a policy for refunding unused tuition and fees to ensure that the refund of such unused funds would be consummated within thirty (30) days. Draughon failed to maintain such a policy, and now argues that denial of its Certificate on this basis constitutes an impermissible discrimination against Draughon under Section 525(a) for failure to pay arguably dischargeable prepetition debts.

TEA, however, is complaining of more than Draughon's mere failure to pay prepetition debts. Even if Draughon had been refunding unused tuition and fees timely, it had no policy to do so nor was it able by any evidence to show that it had in fact been doing so despite the lack of such policy. Draughon failed to comply with the statute requiring Draughon to have a policy in place to ensure timely consummation of refunds. As TEA's conduct was not based "solely" on the proscribed reasons under Section 525(a), there has been no violation of that section.

*In re The Bible Speaks*, 69 B.R. 368 (Bankr.D.Mass.1987), relied upon by Draughon, is distinguishable. In that case, the only reason for the governmental unit's conduct was the debtor's insolvency, and the governmental unit revoked the debtor's license solely because the debtor's insolvency violated a statute regulating financial soundness. TEA, on the other hand, denied Draughon's Certificate of Approval for reasons other than those proscribed under Section 525(a).

## SECTION 362

■ Draughon argues that TEA has knowingly and willfully violated and continues to violate Section 362(a)(1), (3) and (6). Section 362(a)(1) provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against a debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]"

However, Section 362(b)(4) provides that the Section 362(a)(1) stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]" TEA argues that its license revocation proceedings were a valid exercise of its police and regulatory power, and are therefore exempt from the automatic stay pursuant to Section

362(b)(4). Draughon, on the other hand, argues that TEA acted solely on the basis of Draughon's financial condition and failure to pay prepetition debts. Such conduct, according to Draughon, is not the type of police or regulatory power exempted under § 362(b)(4) from the automatic stay.

Preliminarily, it should be pointed out that "the Code does not change the business and regulatory environment in which a debtor operates. A debtor-in-possession under Chapter 11 is not *pro tanto* excused by virtue of its bankruptcy from complying with valid and enforceable state and local regulation. By virtue of 28 U.S.C. § 959(b), it is required to obey them." *In re Beker Industries Corp.*, 57 B.R. 611, 624 (Bankr.S.D.N.Y.1986). 28 U.S.C. § 959(b) provides that the debtor-in-possession must "manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." Federal bankruptcy law is not designed to displace valid state and local law that is not in conflict with the Bankruptcy Code. *Beker Industries Corp.*, 57 B.R. at 623. Thus, under § 362(b)(4), Congress has specifically exempted from the prohibitions of the automatic stay certain regulatory actions against the debtor or property of the estate. The issue for our determination, then, is whether TEA's conduct in this case qualifies for the § 362(b)(4) exemption from the automatic stay.

As set forth above, one of the reasons for the denial of Draughon's certificate was for the failure to comply with a state law requiring proprietary schools such as Draughon to have in place a policy to ensure that the refund of unused tuition and fees would be completed within thirty days. The purpose of this statute is obvious on its face. It provides protection to the members of the public who are consumers of the services sold by Draughon by ensuring prompt repayment to all students who for whatever reason do not complete the courses at Draughon they have paid for in advance.

Consumer protection is a valid exercise of police and regulatory power for purposes of the Section 362(b)(4) exemption from the automatic stay. Section 362(b)(4) will exempt from the Section 362(a)(1) stay a state agency's proceeding to determine whether a violation of a consumer protection statute has occurred. *In re Charter First Mortgage, Inc.*, 42 B.R. 380 (Bankr.D. Ore.1984) (State of Washington's state court suit against the debtor seeking injunctive relief, penalties and attorney's fees for violations of Washington's Consumer Protection Act was a proper exercise of police and regulatory power under Section 362(b)(4)). However, to qualify as a valid police or regulatory action under Section 362(b)(4), the proceeding must effectuate the policy of the statute at issue rather than merely adjudicate private rights between the parties to the proceeding. Further, execution of the statute at issue must accomplish more than a mere pecuniary purpose, that is, the governmental unit may not use the police and regulatory power exception to the automatic stay to attempt to gain a purely economic advantage in favor of itself or a select group of creditors over third parties in relation to the debtor's estate. *In re Poule*, 91 B.R. 83 (9th Cir.BAP 1988); *Charter First Mortgage, supra.*

In *Poule*, the Registrar of Contractors for the State of California initiated proceedings against the debtor for violations of the California Contractor's Licensing Law. The Registrar sought penalties and restitution to the injured customer. The court held that the statute under which the Registrar was proceeding had a legitimate public safety purpose, and the imposition of penalties against the debtor would further that purpose. Hence, the Registrar's assessment of penalties was exempt from the automatic stay under Section 362(b)(4). However, the court found that the Registrar's order to the debtor to reimburse the customer resulted from the adjudication of purely private rights, and thus did not fall under the Section 362(b)(4) exemption. *Poule*, 91 B.R. at 87.

In *Charter First Mortgage*, the State of Washington filed suit against debtor seeking injunctive relief, penalties, attorney's fees and restitution under Washington's Consumer Protection Act. The debtor subsequently filed a petition in bankruptcy and notified the State. When the State of Washington continued to prosecute its suit, the debtor sought to enjoin it. The court held that Washington's Consumer Protection Act had a valid public purpose, and that the imposition of injunctive relief, penalties and attorney's fees on the debtor would further that purpose. However, the court found that the claim for restitution was merely an attempt by the state to collect private claims on behalf of its citizens outside of debtor's bankruptcy proceedings. Thus, the claim for restitution was not exempted from the automatic stay under Section 362(b)(4). *Charter First Mortgage*, 42 B.R. at 382–85.

Similarly, in *In re Corporacion de Servicios Medicos Hospitalarios*, 805 F.2d 440 (1st Cir.1986), cited by Draughon, the court held that a governmental unit's suit to enforce a contract with the debtor was not an exercise of police or regulatory power, and thus was not exempt under Section 362(b)(4) from the automatic stay, even though a license revocation procedure was also subsequently initiated. The court found that the suit on the contract was not an attempt to enforce a generally applicable regulatory law, but was an attempt to deprive the estate of its principle asset. *Corporacion*, 805 F.2d at 446–47. Whether a license revocation proceeding alone would have been exempt as an exercise of police and regulatory power was not before the court in that case.

In light of the jurisprudence delineating the proceedings which fall under the Section 362(b)(4) exemption from the automatic stay, the court finds that TEA's proceedings determining that Draughon was in violation of state law were valid exercises of state regulatory and police power. The state laws which TEA sought to enforce have a valid public purpose, namely, the protection of present and future consumers against the misappropriation of prepaid tuition and fees, and the proceedings to determine Draughon's compliance with these laws advance this purpose. TEA has filed no proof of claim in the bankruptcy case and has not asserted any claim on behalf of itself or the students to whom Draughon may owe refunds. TEA's proceedings do not seek to adjudicate purely private rights, nor does TEA seek to obtain an economic advantage for itself or a select group of citizens over Draughon's creditors in relation to Draughon's bankruptcy estate. The December 13, 1989, letter assessing interest under Section 32.39(e) is in the nature of restitution, recovery of which was disallowed under Section 362(b)(4) in *Poule, supra;* and *Charter First Mortgage, supra.* Additionally, TEA's postpetition act to assess prepetition interest against the debtor is stayed pursuant to § 362(a)(6).

Thus, to the extent that TEA has initiated and concluded Section 362(a)(1) proceedings in the past, or may initiate and conclude such proceedings in the future, to determine whether Draughon is in compliance with the state regulatory scheme governing proprietary schools, such proceedings are exempt from Section 362(a)(1) as provided in Section 362(b)(4).

■ However, TEA has done more than merely make a determination that Draughon is in violation of state law. TEA has enforced this finding by denying Draughon's Certificate of Approval. Draughon argues that this conduct violates Section 362(a)(3), and that Section 362(b)(4) does not exempt state regulatory proceedings from the Section 362(a)(3) stay.

Section 362(a)(3) provides that the filing of a bankruptcy petition operates as a stay against all entities of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" Following its determination that Draughon had failed to remedy the violations of state law of which it notified Draughon in its notice of Intent to Deny Certificate Approval, TEA denied Draughon's Certificate of Approval and suspended Draughon's authority to accept and enroll new students.

If this Certificate constitutes property of the estate, then TEA is in violation of Section 362(a)(3), because by its own terms, Section 362(b)(4) does not exempt from the automatic stay acts to gain possession or control of property of or from the estate which are stayed by § 362(a)(3).

Section 541(a) of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." "Congress intended a broad range of property to be included in the estate." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 and n. 9, 103 S.Ct. 2309, 2313 and n. 9, 76 L.Ed.2d 515 (1983). A right, privilege, or license to operate or do business, granted or issued under state or federal law, is generally held to be property of the estate. Take-off and landing "slots" at various high traffic airports, created under federal regulations which granted merely the right to take-off and land at certain time periods at various airports, have been found to be property of the estate. *In re McClain Airlines, Inc.*, 80 B.R. 175 (Bankr.D.Ariz. 1987). State issued liquor licenses, *In re Miller*, 68 B.R. 385 (Bankr.W.D.Pa.1986), a regional impact order of a county board of commissioners permitting the licensee to transport phosphate, *Beker Industries, supra,* and a certificate of public convenience and necessity authorizing the certificate holder to operate as a common carrier, *In re Rocky Mountain Trucking Co., Inc.*, 47 B.R. 1020 (Bankr.D.Col.1985), all have been held to be property of the estate. Restrictions on the transfer of such a license or certificate of operation such as the transfer restrictions in Section 32.34(c) of the Texas Education Code, are not fatal to the determination of its status as property, because Section 541(c)(1)(A) provides that contractual or statutory transfer restrictions or conditions do not prevent a property interest from becoming property of the estate. *In re McClain Airlines, supra; In re Miller, supra.*

Under the foregoing jurisprudence interpreting Section 541(a), the court finds that the Certificate of Approval issued by TEA to Draughon is property of the estate. Under section 32.31 of the Texas Education Code, no proprietary school such as Draughon may operate without such a Certificate of Approval, nor may any such proprietary school enforce any contract with any other person when such proprietary school has failed to obtain a Certificate of Approval. It is apparent from this statute that, like the licenses and operational certificates in the above cited cases, the Certificate carries with it the right to do business in a government regulated industry in which, without such a license, the school would be proscribed from operating.

As the Certificate of Approval issued by TEA to Draughon is property of the estate, TEA's action in denying renewal of the Certificate after Draughon's bankruptcy filing was an act to obtain possession of property of the estate or to exercise control over property of the estate and therefore constitutes a violation of Section 362(a)(3).

■ TEA argues that it is exempt from the reach of the automatic stay because of sovereign immunity. However, Section 106(c) provides in pertinent part that "not withstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Section 362(a) states that it applies to "all entities." Under Section 106(c), then, the provisions of the automatic stay in Section 362(a) will apply to TEA. Thus, to the extent that TEA's actions against Draughon or against property of the estate are not otherwise exempt from Section 362(a) under Section 362(b)(4), these actions are stayed. *Hoffman v. Connecticut Dept. of Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). Furthermore, conduct in violation of the stay is void *ab initio*, so that TEA's denial of Draughon's Certificate of Approval in violation of Section 362(a)(3) is null and void and without effect. *Homer National Bank v. Namie*, 96 B.R. 652, 654 (W.D.La.

1989). TEA must reinstate Draughon's Certificate of Approval.

■ Section 106(c) does not operate as a waiver of sovereign immunity with respect to a claim under Section 362(h) for monetary damages, however. *Hoffman, supra; Small Business Administration v. Rinehart,* 887 F.2d 165 (8th Cir.1989). Therefore, this Court does not address the issue of whether TEA's conduct merits the imposition of actual damages, attorney's fees, and/or punitive damages under Section 362(h).

## ABSTENTION

■ TEA is not in a proper posture to raise the issue of abstention as a defense to Draughon's present motion. Draughon's Rule to Show Cause is not based on state law, but on federal bankruptcy law. *Beker Industries,* 57 B.R. at 620–21. Should TEA subsequently seek relief from the automatic stay of Section 362(a)(3), this Court may then more properly address the issue of abstention.

## CONCLUSION

TEA may proceed with administrative proceedings to determine whether Draughon is in compliance with state law and regulations, but TEA may not implement or enforce any administrative finding or result if to do so would affect property of the estate without first seeking relief from the automatic stay or other appropriate relief under the Bankruptcy Code.

PURSUANT TO THE FOREGOING, IT IS ORDERED:

I. TEA's December 13, 1989, denial of the Certificate of Approval of Draughon Training Institute, Inc. and the assessment of interest on unrefunded tuition and fees, is NULL and VOID, and TEA is ordered to RESCIND this denial, and to REINSTATE and otherwise RESTORE all rights which Draughon Training Institute, Inc. had in its Certificate of Approval as of December 7, 1989;

II. Absent a lifting of the § 362(a)(3) stay, the TEA shall REFRAIN from any further acts to revoke, or deny, or otherwise interfere with Draughon Training Institute, Inc.'s Certificate of Approval, or otherwise interfere with the authority of Draughon Training Institute, Inc. to accept and enroll students during the pendency of this case; however, nothing herein shall prohibit or prevent TEA from engaging in any conduct allowed by Section 362(b)(4) of the Bankruptcy Code.

III. The TEA does not have the right to assert "sovereign immunity" as a defense or shield excepting such governmental unit from the effects of § 362, specifically § 362(a)(3), *BUT* all claims of the debtor against the TEA for damages, attorney's fees, etc. pursuant to § 362(h) are DENIED as such governmental unit may assert "sovereign immunity" as to such claims.