In re DRAUGHON TRAINING INSTITUTE, INC., Debtor.

In re DRAUGHON BUSINESS COLLEGE, INC., Debtor.

In re LOUISIANA BUSINESS COLLEGE OF TUPELO, INC., Debtor.

In re LOUISIANA BUSINESS COLLEGE OF MONROE, INC., Debtor.

In re TEXAS DRAUGHON INSTITUTE, INC., Debtor.

Bankruptcy Nos. 89BK–13095–S11 through 89BK–13099–S11.

United States Bankruptcy Court, W.D. Louisiana, Shreveport Division.

June 18, 1990.

 

Curtis R. Shelton, Cook, Yancey, King & Galloway, Shreveport, La., for plaintiff.

Molly D. Shannon, Asst. Atty. Gen., Austin, Tex., for Tex. Educ. Agency.

C. William Tayler and Carol S. Rabenhorst, Sachs & Tayler, Washington, D.C., and Christopher L. Zaunbrecher, Jeansonne and Briney, Lafayette, La., for Ass'n of Independent Colleges and Schools.

Elizabeth M. Harris, Office of Gen. Counsel, Washington, D.C., for U.S. Dept. of Educ.

## MEMORANDUM RULING AND ORDER

STEPHEN V. CALLAWAY, Chief Judge.

The debtors-in-possession in these cases (hereinafter collectively referred to as "Draughon"), operate a number of proprietary schools in Texas, Louisiana and Mississippi. Draughon seeks to sell these schools to W.E. Walker, Inc., a Mississippi corporation (hereinafter "Walker"). The sale is contingent upon Walker's receiving licensing and accreditation from various state and federal agencies and private accreditation associations. Without such licenses and accreditation, Walker cannot participate in federal educational programs, and will not receive federal funds. Unless it can begin receiving such federal funds immediately, Walker does not desire to consummate the sale.

In connection with its proposed sale of these schools, Draughon has requested this court to order the United States Department of Education (hereinafter "DOE"), the Association of Independent Colleges and Schools (hereinafter "AICS") and the Texas Education Agency, Division of Proprietary Schools and Veterans Affairs (hereinafter "TEA"), (hereinafter collectively referred to as "defendants in rule"), to transfer to Walker the various licenses, certificates and accreditation presently held by Draughon. Defendants in rule have objected to this proposed order. DOE and AICS argue that the rights granted by them are not property of the estate, or if found to be property of the estate, are not transferable. In essence, DOE and AICS

argue that Draughon's transferee will have to follow the same qualification procedures as any other applicant for accreditation or licensing. TEA did not set forth any specific grounds for its objection.

AICS is a private non-governmental association of members governed by a contractual agreement relating to the terms and requirements of accreditation. One of the requirements for AICS accreditation which Walker must meet is the assumption of liability for any unreimbursed federal student loan refunds. Although AICS concedes that it is stayed from requiring both Walker and the debtor-in-possession to repay these amounts, AICS insists that Walker comply with all other requirements for accreditation.

The DOE has responded to the Draughon's motion by indicating that it cannot pre-approve Walker as an entity eligible to receive federal education funds. The DOE states that Walker must comply with the same qualification procedures with which any other transferee must comply. A transferee can either independently qualify for Title IV, HEA programs by satisfying all statutory requirements for such program including being in existence for two years. If the transferee does not wish to wait the statutory two year period, it can by-pass this two year waiting period and be treated as the prior institution for eligibility requirements by agreeing to assume liability for any Title IV, HEA program funds that were improperly spent by the previous owner before the date of transfer, agreeing to honor the refund policy that applied to students enrolled before the date of transfer, and agreeing to honor all student enrollment contracts signed before the date of the transfer. In either case, however, it is the transferee who must qualify, not the transferor.

Draughon complains that requiring Walker to meet eligibility requirements with respect to the unreimbursed loan refunds violates the automatic stay under § 362 of the Bankruptcy Code, and constitutes discrimination against the debtor under § 525 of the Bankruptcy Code.

Draughon's motion presents several issues for decision. First, are the licenses and accreditation issued by DOE, AICS and TEA property of the estate such that this court has jurisdiction over such items? Second, if these licenses and accreditation are property of the estate, are non-bankruptcy restrictions on their transfer enforceable when a debtor-in-possession attempts to sell these items to a non-debtor third party? Finally, regardless of whether these licenses and accreditations are or are not property of the estate, does the conduct of the DOE, AICS and TEA in objection to the transfer of these items violate the provisions of § 525(a) of the Bankruptcy Code?

## Property of the Estate

DOE argues that Draughon's eligibility to participate in Title IV, HEA programs and the resulting right to receive federal funding is a mere status and is not property of the estate. Similarly, AICS argues that the accreditation it conferred on Draughon is status rather than property of the estate. TEA has set forth no grounds for its objection, but this Court takes judicial notice of the Memorandum Ruling and Order it issued on April 10, 1990, in *In re Draughon Training Institute, Inc.*, 119 B.R. 921, on Draughon's rule to show cause, finding TEA to be in violation of the automatic stay for revoking Draughon Training Institute, Inc.'s Certificate of Approval. This Court will assume that the grounds for TEA's objection to Draughon's instant motion are the same as were raised by TEA in response to Draughon's above referenced motion. In its April 10, 1990, Memorandum Ruling, this Court found the Certificate of Approval issued by the TEA to be property of the estate, notwithstanding its non-assignability under state law. For purposes of TEA's objection here, this Court similarly finds the Certificate of Approval issued by the TEA to be property of the estate. This Court now proceeds to determine whether the accreditation granted by AICS and the certification granted by DOE are property of the estate.

Section 541(a) of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." "Congress intended a broad range of property to be included in the estate." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313 and n. 9, 76 L.Ed.2d 515 (1983). A right, privilege, or license to operate or do business, granted or issued under state or federal law, is generally held to be property of the estate. Take-off and landing "slots" at various high traffic airports, created under federal regulations which granted merely the right to take-off and land at certain time periods at various airports, have been found to be property of the estate. *In re McClain Airlines, Inc.,* 80 B.R. 175 (Bankr.D.Ariz. 1987). State issued liquor licenses have been found to be property of the estate. *In re Miller,* 68 B.R. 385 (Bankr.W.D.Pa. 1986). In *In re Beker Industries Corp.,* 57 B.R. 611 (Bankr.S.D.N.Y.1986), a regional impact order of a county board of commissioners permitting the licensee to transport phosphate was found to constitute property of the estate, and in *In re Rocky Mountain Trucking Co., Inc.,* 47 B.R. 1020 (D.Col.1985), a certificate of public convenience and necessity authorizing the certificate holder to operate as a common carrier was held to be property of the estate.

Under the foregoing jurisprudence interpreting § 541(a), DOE's certification of Draughon as an institution eligible to participate in federal educational funding programs is property of the Draughon's estate. Such certification gives the recipient the right to receive federal funds. This governmentally granted entitlement has value, and although not assignable (see below), does constitute property of the estate.

AICS accreditation, on the other hand, is not property of the estate. This court is persuaded by the holding in *In re Nasson College,* 80 B.R. 600 (Bankr.D. Maine, 1988) that accreditation is mere status rather than property. In *Nasson,* a case factually similar to the case at hand, a Chapter 11 debtor sought to sell a college, but the sale was conditioned upon the transferee receiving the accreditation which the debtor previously lost due to its failure to comply with the accreditation organization's requirements. This accreditation had been issued by a voluntary, self-governing, non-governmental organization such as the AICS. Following the sale, the college reopened and the debtor sued for an injunction to reinstate the prior accreditation. The defendant accreditation organization, however, indicated that the purchaser would have to apply for accreditation in its own right. The court found that accreditation was not property, and the accreditation organization had not therefore violated the automatic stay by revoking the debtor's accreditation during the pendency of the bankruptcy case. As AICS accreditation is not property of Draughon's estate, this court is without authority to order AICS to transfer its accreditation of Draughon to Walker.

DOE argues in the alternative that the certification issued by it is non-assignable, and that this non-assignability prevents DOE certification from becoming property of the estate. Under § 541(c)(1)(A) of the Bankruptcy Code, however, contractual and non-bankruptcy law transfer restrictions do not prevent a property interest from becoming property of the estate. *In re McClain Airlines, supra; In re Miller, supra.* Section 541(c)(1)(A) provides that property of the debtor becomes property of the estate notwithstanding any contractual or applicable non-bankruptcy law provision "that restricts or conditions transfer of such interest by the debtor." Thus, that DOE certification is not transferable does not prevent it from becoming property of the estate upon the debtor's filing for bankruptcy.

It must still be determined, however, whether such transfer restrictions are enforceable against a debtor-in-possession which attempts to transfer property out of the estate to a non-debtor third party.

*Transfer Restrictions under § 363(l)*

Draughon has requested this Court to order the defendants in rule, DOE, AICS and TEA, to transfer to a non-debtor third

party the licenses, accreditation, certification, and other grants which the defendants had previously issued to Draughon.

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may ... sell ... other than in the ordinary course of business, property of the estate." Further, § 363(*l*) provides:

[T]he trustee may ... sell ... property under subsection (b) or (c) of this section, or a plan under Chapter 11, 12, or 13 of this title may provide for the ... sale ... of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or under the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

It is significant that although § 541(c)(1) renders transfer restrictions inoperable when determining whether property becomes property of the estate, § 363 places restrictions only upon prohibiting subsequent sales and not upon what can be sold. There is no language in § 363 that changes what the debtor has to sell. The absence of such language in § 363 indicates to this Court that a debtor-in-possession cannot sell property which is itself non-transferable. The jurisprudence on this issue holds that non-bankruptcy related transfer restrictions burdening property will be given effect when property is sold out of the estate to a non-debtor third party.

In *In re Baquet*, 61 B.R. 495 (Bankr.D. Mont.1986), the court avoided an alleged lien in stock of a closely held corporation. The lien had been created in violation of an agreement between the shareholders restricting transfer of the stock. The court held that the shares of stock owned by the debtor became the property of his bankruptcy estate notwithstanding the transfer restrictions because § 541(c)(1)(A) precludes the operation of such transfer restriction when property is being brought into the estate. However, the court pointed out that although bankruptcy law determines what property of the debtor becomes property of the estate, non-bankruptcy law determines the extent of the debtor's interest in that property. The debtor will have no greater rights in property inside the bankruptcy case than he had prior to the case. For this reason, the debtor-in-possession or the trustee will be bound by whatever non-bankruptcy related transfer restrictions the property of the estate had on it prior to the bankruptcy. The court allowed the trustee to liquidate the stock, but only subject to the terms of the restrictions set forth in the stock transfer agreement.

Thus, although § 541(a) determines what property of the debtor becomes property of the bankruptcy estate, the existence and nature of the debtor's interest in property are determined by non-bankruptcy law. *In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir.1988), *cert. denied sub nom., Universal Cooperative, Inc. v. FCX, Inc.*, 489 U.S. 1011, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986); *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir.1987); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *4 Collier on Bankruptcy ¶ 541.01, at 541-10, 10–13* (15th Ed.1985). The applicable non-bankruptcy law under which DOE and TEA issued their licenses and certification to Draughon, and the contractual agreement which Draughon entered into with AICS in order to receive certification, provide that these licenses, certification and accreditation are non-transferable. This Court is therefore without power to order defendants in rule to transfer Draughon's license, certification and accreditation to Walker, for to do so would impermissibly expand Draughon's property rights beyond those which Draughon would otherwise be entitled to outside the bankruptcy court.

## Section 525

Notwithstanding the non-transferability of the licenses, accreditation and certifica-

tion issued by defendants in rule, Draughon argues that the refusal of the defendants in rule to agree to their transfer unfairly discriminates against Draughon in violation of 11 U.S.C. § 525(a). § 525(a) provides:

> [a] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

■ Section 525(a) applies only to a "governmental unit." AICS is a private organization, not a governmental unit. As such, AICS is completely beyond the scope of § 525.

■ The DOE and TEA, on the other hand, are ·governmental units. However, their conduct in objecting to the transfer of their licenses and certification does not violate § 525(a). The DOE and TEA merely seek to enforce against Draughon, as they would against any licensee, the non-bankruptcy law restrictions on the transfer of the licenses issued by them. Such conduct is motivated neither by Draughon's status as a debtor nor by Draughon's failure to pay pre-petition debts. The objections to the transfer raised by the defendants do not bring into play § 525. By requiring Draughon's transferee to qualify in its own rights for a license, accreditation, and certification, the defendants are taking no action against the debtor. Defendants are enforcing their eligibility requirements against Walker, not Draughon. Further-more, although § 525 also prohibits discriminatory treatment of one who has been associated with a debtor, this Court finds that this protection more properly extends to one who has been a co-owner, co-obligor, co-debtor, joint venturer, partner, agent, representative, or spouse of the debtor, rather than a transferee of the debtor.

### Section 362

■ The debtor also complains that by requiring its transferee to independently qualify for licenses, accreditation, and eligibility for federal funding, the defendants are violating § 362(a) which provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that

arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

The defendants' conduct does not violate § 362(a)(1) because, as set forth above, the defendants require that the transferee, not the debtor meet their eligibility and licensing requirements.

Section 362(a)(3) is not violated because the defendants do not seek to exercise control over or obtain possession of property of the estate or property from the estate. Rather, what the defendants seek is for the transferee, once it has purchased certain assets from the debtor, to qualify to receive licenses and accreditation and eligibility for federal funding in connection with those assets which it has purchased. The defendants do not seek to create, perfect or enforce any liens against property of the estate nor property of the debtor, resulting in no violation of § 362(a)(4) and (5).

Nor do the defendants seek to collect, assess, or recover any claim against the debtor, thereby precluding any violation of § 362(a)(6).

As no judgment, setoff, or proceeding before a United States Tax Court is involved, section 362(a)(2), (7), and (8) are not brought into play under the facts of this case.

*Conclusion*

DOE and AICS do not seek to block the sale of the schools themselves. Rather, DOE and AICS object to the transfer of the accreditation and certification previously held by Draughon because this accreditation and certification themselves are not transferable. The applicable statutes, regulations and contractual provisions governing this accreditation and certification require that the transferee of a previously accredited or certified institution qualify in its own right for such accreditation and certification. In order to qualify for certification, the transferee must either work for its accreditation or certification by establishing its financial soundness or pay for certification by assuming the liabilities of its transferor. Walker desires to do neither in this case, and instead wants to receive its certification and accreditation for free. This free ride is precluded by non-bankruptcy law and the provisions of the AICS. The mere fact that Walker's transferor is a debtor-in-possession does not relieve Walker of the requirement of qualifying in its own right for accreditation and certification.

As TEA has filed only a general objection to Draughon's motion, this Court has addressed TEA's objection only to the extent that this Court can take judicial notice of applicable Texas law by virtue of the previous Memorandum Ruling and Order issued on April 10, 1990, in *In re Draughon Training Institute, Inc.*, 119 B.R. 921. By failing to file any specific objections to Draughon's instant motion, any such specific objection of TEA is waived.

For the foregoing reasons, therefore, defendants, TEA, DOE and AICS are not precluded from enforcing their licensing, certification and accreditation requirements against Walker and/or any other transferee of the debtors. Such conduct does not violate the provisions of the automatic stay nor is such conduct prohibited under § 525. Draughon's request that this court order defendants to transfer to Walker the licenses and accreditations previously issued to Draughon is denied.

IT IS SO ORDERED.